(No. 63323.—

PRE-SCHOOL OWNERS ASSOCIATION OF ILLINOIS, INC., *et al.*, Appellees, v. THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES *et al.*, Appellants.

*Opinion filed January 19, 1988.*

CUNNINGHAM, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellants.

Wood, Lucksinger & Epstein, of Chicago (Alan E. Sohn, of counsel), for appellees.

Brooke R. Whitted and Richard C. Spain, of Whitted & Spain, P.C., of Chicago, for *amicus curiae* Illinois Advisory Committee on Non-Public Schools.

David C. Gibbs, Jr., Charles E. Craze, Charlotte A. Cover and Thomas W. Current, of Gibbs & Craze Co., L.P.A., of Cleveland, Ohio, for *amici curiae* Christian Law Association and Christian Schools of Illinois.

JUSTICE MILLER delivered the opinion of the court:

The Pre-School Owners Association of Illinois, Inc., Burton D. Miller, and Crossroads Campus, Inc., brought

this action in the circuit court of Cook County for declaratory and injunctive relief, challenging the constitutionality of certain provisions of the Child Care Act of 1969 (Ill. Rev. Stat. 1985, ch. 23, pars. 2211 through 2230) (the Act) and of certain administrative regulations promulgated by the Department of Children and Family Services under authority of the Act. The trial judge granted the plaintiffs' motion for summary judgment on counts I through IV of their eight-count amended complaint, ruling that the statutory and administrative provisions challenged in those counts were unconstitutional. The trial judge made the finding necessary for an immediate appeal of that decision (see 107 Ill. 2d R. 304(a)), and the Department and its Director, named as defendants in the action, have appealed directly to this court (see 107 Ill. 2d R. 302(a)). Several organizations—the Illinois Advisory Committee on Non-Public Schools, the Christian Law Association, and Christian Schools of Illinois—have submitted *amicus* briefs in behalf of the defendants.

The Child Care Act of 1969 provides for the licensing and regulation of child care facilities in the State, and the legislature has committed that task to the Department of Children and Family Services. The Department has the responsibility for issuing, renewing, and revoking licenses for the operation of the various types of child care facilities that fall within its authority. The Act requires that the operator and the facility undergo examinations before a license may be issued (see Ill. Rev. Stat. 1985, ch. 23, par. 2215), and in connection with that responsibility, the Department is authorized to prescribe regulations for child care facilities (see Ill. Rev. Stat. 1985, ch. 23, par. 2217). A violation of the Act or of a departmental regulation is punishable as a class A misdemeanor. See Ill. Rev. Stat. 1985, ch. 23, par. 2228.

In their action, the plaintiffs challenged a number of the statutory provisions and administrative regulations that are applicable to day-care centers. Plaintiff Pre-School Owners Association is an association of some 200 day-care centers in Illinois; plaintiff Burton D. Miller is the owner and operator of a day-care center, the Institute for Contemporary Education; and plaintiff Crossroads Campus, Inc., is a day-care center. In that part of the amended complaint at issue here, the plaintiffs attacked on several constitutional grounds the statutory provision that exempts certain types of day-care centers from coverage of the Act and challenged a number of the Department's regulations as violative of due process.

I

The Act exempts certain categories of day-care centers from its coverage, and in counts I and III of their amended complaint the plaintiffs contended that the statutory exemptions were invalid under the Federal and State Constitutions because they denied equal protection and constituted special legislation (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2; art. IV, sec. 13). In count II the plaintiffs made the additional argument that an exemption for certain sectarian day-care facilities was a religious preference and therefore violated the establishment clause of the United States Constitution (U.S. Const., amend. I) as well as the comparable provision of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 3). The trial judge agreed with the plaintiffs and ruled that the statutory exemptions were invalid on the grounds asserted.

Section 2.09 of the Act (Ill. Rev. Stat. 1985, ch. 23, par. 2212.09) defines the term "day care center" as "any child care facility which regularly provides day care for *** (1) more than 8 children in a family home, or (2) more than 3 children in a facility other than a family

home." Section 2.09 also sets out the following nine exceptions to that definition:

"(a) [P]rograms operated by public or private elementary school systems or secondary level school units or institutions of higher learning which serve children who shall have attained the age of 3 years; (b) programs or that portion of the program which serves children who shall have attained the age of 3 years and which are recognized by the State Board of Education; (c) educational program or programs serving children who shall have attained the age of 3 years and which are operated by a school which is registered with the State Board of Education and which is recognized or accredited by a recognized national or multistate educational organization or association which regularly recognizes or accredits schools; (d) programs which exclusively serve or that portion of the program which serves handicapped children who shall have attained the age of 3 years but are less than 21 years of age and which are registered and approved as meeting standards of the State Board of Education and applicable fire marshal standards; (e) facilities . operated in connection with a shopping center or service, religious services, or other similar facility, where transient children are cared for temporarily while parents or custodians of the children are occupied on the premises and readily available; (f) any type of day care center that is conducted on federal government premises; (g) special activities programs, including athletics, crafts instruction and similar activities conducted on an organized and periodic basis by civic, charitable and governmental organizations; (h) part day child care facilities, as defined in Section 2.10 of this Act; or (i) programs or that portion of the program which (1) serves children who shall have attained the age of 3 years, (2) is operated by churches or religious institutions as described in Section 501(c)(3) of the federal Internal Revenue Code, (3) receives no governmental aid, (4) is operated as a component of a religious, nonprofit elementary school, (5) operates primarily to provide religious education, and (6) meets appropriate State or local health and fire safety standards."

The exemptions contained in section 2.09 may be grouped, for reference, into three general categories. First, subsections (a), (b), (c), (d), and (i) exclude from coverage of the Act programs that are affiliated with schools or with institutions that come within the authority of the State Board of Education. Second, subsections (e), (g), and (h) exempt programs that operate on a short-term or temporary basis or serve a transient population. Third, subsection (f) exempts day-care programs that are conducted on Federal government premises. The trial judge ruled that the exemptions contained in section 2.09 denied the plaintiffs equal protection and were invalid as special legislation. The trial judge also found that the separate exemption accorded to certain sectarian day-care centers in subsection (i) was an invalid religious preference under the Federal and State Constitutions.

Statutes are presumed to be constitutional, and one who challenges a provision has the burden of establishing its invalidity. (*Sayles v. Thompson* (1983), 99 Ill. 2d 122, 124-25.) We shall first consider whether the exemptions contained in section 2.09 deny equal protection or are invalid as special legislation. The provision at issue here does not "implicate a suspect or quasi-suspect classification, and accordingly the appropriate standard for determining the equal protection challenge[] under the Illinois and Federal constitutions is whether the legislation bears a rational relationship to a legitimate governmental interest. (*McDonald v. Board of Election Commissioners* (1969), 394 U.S. 802, 809, 22 L. Ed. 2d 739, 745, 89 S. Ct. 1404, 1408; *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 119-20.) This standard applies as well to the additional argument that the provision[] violate[s] the State constitutional prohibition against special legislation (*Jenkins v. Wu* (1984), 102

Ill. 2d 468, 477-78; *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 315), for although the guarantee of equal protection and the prohibition against special legislation are not identical, they are 'generally judged by the same standard' *(Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 368)." *Bernier v. Burris* (1986), 113 Ill. 2d 219, 228.

As we have noted, the legislature has chosen in section 2.09 to exempt from coverage of the Act three general categories of day-care centers: those that are operated by or in conjunction with schools or that come within the authority of the State Board of Education, those that provide a temporary or short-term service or serve a transient population, and those that are conducted on Federal government premises. The validity of the classifications drawn by the latter two groups does not require extended discussion. It was well within the legislature's province to determine that programs serving a transient population or providing short-term or temporary care, by their very nature, did not pose the problems that prompted the decision to regulate the subject in the first place. The legislature may choose to address what it perceives to be the more pressing aspects of a particular problem. (*Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 489, 99 L. Ed. 563, 573, 75 S. Ct. 461, 465; *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 366-67.) With respect to the exemption for day-care programs conducted on Federal premises, the legislature correctly determined that State regulation would be incompatible with the broad immunity from State regulation enjoyed by Federal installations and activities under the supremacy clause, in the absence of an expression of a contrary intent by Congress. See U.S. Const., art. VI, cl. 2; *Hancock v. Train* (1976), 426 U.S. 167, 48 L. Ed. 2d 555, 96 S. Ct. 2006.

The characteristic common to the remaining group of exemptions, those contained in sections 2.09(a), (b), (c), (d), and (i), is that they are operated by or in conjunction with schools or that they come directly within the authority of the State Board of Education. Several considerations are at work here. Subsections (b), (c), and (d) refer expressly to programs that are registered with or recognized by the State Board of Education. With respect to those programs, then, the legislature has apparently chosen to divide between the State Board of Education and the Department of Children and Family Services administrative responsibility over day-care programs that are allied with schools and those that are not. That the State Board of Education has not itself promulgated a detailed set of regulations governing day-care activities is no impediment to recognizing the validity of that classification. The State Board of Education may regulate the programs in other respects, and the legislature may have believed that authority over staffing and other matters would satisfy the objections that led to regulation of day-care centers in the first place.

Also, the legislature could determine that day-care programs that are affiliated with schools, or that come within the authority of the State Board of Education, would already have available to them the staff, facilities, and experience deemed necessary for their safe and beneficial operation. In this regard we note that the exemptions for school-related facilities are all limited to programs serving children "who shall have attained the age of 3 years" (see Ill. Rev. Stat. 1985, ch. 23, pars. 2212.09(a), (b), (c), (d), (i)) and therefore do not apply to those serving children younger than the preschool level.

In light of the classifications made by the legislature in section 2.09, we believe that *Milwaukee Montessori School v. Percy* (E.D. Wis. 1979), 473 F. Supp. 1358, cited by the plaintiffs, is inapposite. That case concerned

a Wisconsin statute governing day-care centers that exempted from regulation programs operated by public or parochial schools. The statute did not provide an exemption for programs operated by private, nonsectarian schools, and the statute was challenged on that ground. The district court entered an order enjoining the State officials from enforcing the statute against the plaintiff school. The court found no rational basis for exempting private, sectarian schools but not private, nonsectarian schools, and the court therefore concluded that the statute denied the plaintiffs equal protection. The statutory provision at issue here is far different. Section 2.09 of the Act does not simply exempt sectarian programs while regulating other, similar ones. Rather, school-affiliated programs of a variety of descriptions enjoy the particular exemption. We conclude that the exemptions provided in section 2.09 do not deny equal protection or constitute special legislation. They are rationally related to the problems and concerns identified by the legislature.

In count II of their amended complaint the plaintiffs made the additional argument that the exemption accorded to sectarian day-care programs by section 2.09(i) provided a preference for religious day-care centers. The plaintiffs contended that the sectarian exemption violated the establishment clause of the Federal Constitution (U.S. Const., amend. I) and the comparable provision of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 3). The trial judge agreed with the plaintiffs and ruled that the exemption was invalid on those grounds.

With respect to both the Federal and State constitutional challenges to the sectarian exemption, the parties agree that our inquiry here must be guided by *Lemon v. Kurtzman* (1971), 403 U.S. 602, 29 L. Ed. 2d 745, 91 S. Ct. 2105. (See *Board of Education v. Bakalis* (1973), 54 Ill. 2d 448, 465-66 (using *Lemon* test in determining va-

lidity of alleged religious preference challenged under article I, section 3, of Illinois Constitution).) *Lemon* provides a three-part test for determining whether a statute violates the establishment clause:

"First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, [citation]; finally, the statute must not foster 'an excessive government entanglement with religion.' [Citation.]" *Lemon v. Kurtzman* (1971), 403 U.S. 602, 612-13, 29 L. Ed. 2d 745, 755, 91 S. Ct. 2105, 2111.

The plaintiffs in this case contend that an invalid religious purpose is apparent in this case, and in support of that contention they point out that section 2.09(i) was enacted as a separate piece of legislation, Public Act 82—982, which took effect in 1983. The plaintiffs rely primarily on *Forest Hills Early Learning Center, Inc. v. Lukhard* (4th Cir. 1984), 728 F.2d 230, *appeal after remand* (4th Cir. 1986), 789 F.2d 295. At issue in *Forest Hills* was a Virginia statute that exempted only sectarian day-care centers from State regulation. In reversing a grant of summary judgment for the defendants, the Federal appeals court believed that, under the *Lemon* test, an invalid religious purpose was apparent in the statute. The State contended that the secular purpose of the statute was to accommodate the free-exercise rights of the exempted religious institutions, but the court termed the statute "facially overbroad" in relation to the free-exercise rights it purported to accommodate. The court believed that it was premature, however, to invalidate the exemption on the limited record before it and therefore remanded the cause so that sectarian day-care centers could intervene in support of the challenged provision.

We believe that several secular purposes are discernible in the statute at issue here, and that *Forest Hills*

may therefore be distinguished. As we noted in discussing the plaintiffs' equal protection and special legislation arguments, the legislature could have properly found that the need for regulation by the Department was more urgent in some areas than in others and therefore could have determined to concentrate the Department's resources on those programs where the perceived need was greater. In subsection (i), the legislature has included the requirement that the program be conducted as a component of an elementary school. This suggests to us, again, that the need for regulation was considered to be less significant in those instances in which the programs were recognized or registered with the State Board of Education or were otherwise associated with schools. Thus, although subsection (i) was enacted as a separate piece of legislation, it conforms in substantial respects to those exemptions already contained in sections 2.09(a), (b), (c), and (d).

Moreover, the Supreme Court has held that "[u]nder the *Lemon* analysis, it is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." (*Corporation of the Presiding Bishop v. Amos* (1987), 483 U.S. ___, ___, 97 L. Ed. 2d 273, 283, 107 S. Ct. 2862, 2868.) Therefore, the legislature may have legitimately believed that the exemption provided in section 2.09(i) would tend to reduce State involvement in matters of religion. In this regard, it may be noted that the exemption provided in section 2.09(i) is narrowly drawn; it is limited to day-care programs that are conducted by religious organizations claiming tax-exempt status under the Federal Internal Revenue Code, that receive no governmental aid, and that are operated primarily to provide religious education.

The exemptions in section 2.09 also satisfy the "effects" part of the *Lemon* test. "For a law to have forbidden 'effects' under *Lemon*, it must be fair to say that the *government itself* has advanced religion through its own activities and influence." (Emphasis in original.) (*Corporation of the Presiding Bishop v. Amos* (1987), 483 U.S. ___, ___, 97 L. Ed. 2d 273, 283, 107 S. Ct. 2862, 2869.) A relevant consideration in making that determination is that a broad range of other, nonreligious entities enjoy the same benefit. (See *Mueller v. Allen* (1983), 463 U.S. 388, 397, 77 L. Ed. 2d 721, 729-30, 103 S. Ct. 3062, 3068.) As we have seen, section 2.09 of the Act extends exemptions to schools of various types as well as to other types of day-care centers; the sectarian day-care centers described in subsection (i) are not the sole or exclusive beneficiaries under the provision.

The third part of the *Lemon* test is readily satisfied in this case. The exemption will tend to avoid rather than foster governmental entanglement with religion. We conclude that section 2.09 of the Act satisfies all three parts of the *Lemon* test and therefore does not violate the establishment clause of the Federal Constitution or provide an invalid religious preference under the State Constitution.

## II

Section 7 of the Child Care Act of 1969 (Ill. Rev. Stat. 1985, ch. 23, par. 2217) requires the Department of Children and Family Services to establish certain minimum standards for child care facilities that fall within its authority. The Department has promulgated a comprehensive scheme for that purpose (see 89 Ill. Adm. Code 407.1 through 407.35 (1985)). The regulations were drafted by the Department with the assistance of various interested parties, who were invited to submit testimony and written statements on proposed rules. In count IV

of their amended complaint the plaintiffs challenged, on grounds of vagueness, 18 of the Department's licensing standards. The defendants submitted affidavits from child care professionals asserting that the regulations were generally understood by persons having experience in the child care field; the plaintiffs submitted counteraffidavits disputing those views. The trial judge agreed with the plaintiffs that the challenged provisions were unconstitutionally vague on their face.

" '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' " (*People v. Ryan* (1987), 117 Ill. 2d 28, 34, quoting *Connally v. General Construction Co.* (1926), 269 U.S. 385, 391, 70 L. Ed. 322, 328, 46 S. Ct. 126, 127.) A provision is facially vague only if it is vague in all its applications. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 494-95, 71 L. Ed. 2d 362, 369, 102 S. Ct. 1186, 1191.

The first group of regulations challenged by the plaintiffs concern general requirements for personnel and are contained in section 407.10(a) of the Department's regulations. That section provides:

"Staff shall generally have the skill and competence necessary to contribute to each child's physical, intellectual, personal, emotional, and social development. Factors contributing to the attainment of this standard include:

(1) *Emotional maturity when working with children.*

(2) *Willingness to cooperate with the aims of the facility.*

(3) Respect for children and adults.

(4) *Flexibility and patience.*

(5) *Physical and mental health which do not interfere with child care responsibilities.*

(6) Good personal hygiene." (Emphasis added.) 89 Ill. Adm. Code 407.10(a) (1985).

The plaintiffs contend that the italicized provisions are unconstitutionally vague on their face. We do not agree. The challenged provisions, it may be noted, are criteria to be considered in determining whether staff have the necessary skill and competence. This court has previously upheld, against vagueness challenges, a statute allowing the revocation of dentists' licences for "improper, unprofessional or dishonorable conduct" (*Chastek v. Anderson* (1981), 83 Ill. 2d 502, 509), as well as a statute allowing the removal of housing authority commissioners who are found to be "incompetent or guilty of neglect of duty or malfeasance" (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 49-51). Expression of licensing standards in those broad terms is therefore acceptable, and we do not believe that the specific criteria listed in the regulations should undermine that.

The plaintiffs also challenge the provisions in sections 407.10(b)(1) and (b)(2) of the rules requiring that "[c]hild care staff shall demonstrate the skills to help children meet their developmental and emotional needs," and that "[c]hild care staff shall demonstrate skill in planning, directing, and conducting programs that meet the children's basic needs." (89 Ill. Adm. Code 407.10(b)(1), (b)(2) (1985).) We do not believe that those requirements are facially vague.

The plaintiffs next question the rules in sections 407.18(e)(2) and (e)(4), which concern procedures for admitting and discharging children, that "[t]he staff shall understand and consider the child's individual background and needs" and that require the discharge of any child who "demonstrates inability to benefit *** or whose presence is detrimental." (89 Ill. Adm. Code 407.18(e)(2), (e)(4) (1985).) The plaintiffs also contest the

provisions in sections 407.19(a)(3) and (a)(6) of the Department's rules that "[d]iscipline shall be developmentally related" and that "[f]irm, positive statements about or redirection of behaviors shall be the effective controlling techniques used with infants and toddlers." 89 Ill. Adm. Code 407.19(a)(3), (a)(6) (1985).

The plaintiffs also challenge a number of the regulations pertaining to the program of activity at day-care centers. The plaintiffs question regulations contained in section 407.21(d) ("The facility shall provide a basic program of activities geared to the age levels and developmental needs of the children served"), section 407.21(d)(2) ("A balance of active and quiet activity"), section 407.21(e) ("The daily program of the facility shall provide experiences which promote the individual child's growth and well-being and the development of self-help and communication skills, ***"), section 407.21(f)(5) ("A program that avoids long waiting periods between activities and prolonged periods during which the children must stand or sit"), section 407.21(g) ("The program shall take into account the stress and fatigue ***"), and section 407.21(i) ("Equipment shall be arranged in orderly, clearly defined areas of interest, with sufficient space in each area for the children to see various activities available to them"). 89 Ill. Adm. Code 407.21(d), (e), (f), (g), (i) (1985).

Finally, the plaintiffs challenge certain regulations pertaining to toys and other play equipment. These provisions include the requirements in section 407.22(a) that equipment and materials shall be "appropriate to the age and developmental needs of the children served," the requirement in section 407.27(f)(4) that "[a] variety of toys shall be accessible on low open shelves," and the requirements in sections 407.28(d) and (e) that indoor equipment shall be available to provide for "active and quiet play appropriate to the age levels" and "developmental

needs" and that outdoor equipment "appropriate to the developmental levels of the children in care shall be provided." (89 Ill. Adm. Code 407.22(a), 407.27(f)(4), 407.28(d), (e) (1985).) The plaintiffs also question the following requirements in Appendix C of the regulations prescribing certain equipment and supplies for preschool programs: "durable large-muscle equipment," "large building blocks," "small building blocks," "durable transportation toys," "permanent equipment for dramatic play use," and "rhythm bands."

No less than a statute, an administrative regulation enjoys a presumption of validity. (*Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 58; *People ex rel. Colletti v. Pate* (1964), 31 Ill. 2d 354, 359.) Most persons who have bought a child a toy or who have supervised children in their games and other activities, it seems, would find sufficient guidance in the challenged regulations. "Where the words and phrases have a technical or special meaning commonly understood by those subject to the rule, the certainty requirement is satisfied." (*Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 58.) It may be anticipated that a licensee or applicant will seek guidance from the Department regarding the meaning of a particular phrase or term used in the regulations. The Department's assistance in this regard is contemplated by section 7(c) of the Act (Ill. Rev. Stat. 1985, ch. 23, par. 2217(c)), which provides:

> "The Department, in applying standards prescribed and published, as herein provided, shall offer consultation through employed staff or other qualified persons to assist applicants and licensees in meeting and maintaining minimum requirements for a license and to help them otherwise to achieve programs of excellence related to the care of children served."

Although certain of the terms listed above may not be familiar to persons who are not engaged in the child care profession, we believe that the regulations are sufficiently specific to guide the conduct of those in the field, as well as to guide the Department in reviewing facilities. We therefore hold that the remaining administrative regulations challenged by the plaintiffs in this case are not unconstitutionally vague on their face.

### III

The plaintiffs also challenge, on two separate grounds, the rule set out in section 407.10(c) of the Department's regulations barring from child care employment persons who have been identified as having committed child abuse or neglect and persons awaiting trial or investigation on those allegations. The plaintiffs contend that the rule is unconstitutionally vague and, further, that it violates due process because it permits the Department to bar from child care employment persons simply on an accusation of certain offenses. The regulation in question provides:

"No individual shall be in contact with children cared for in a day care center who, within the preceding 10 years:

(1) Has been identified through circuit court (juvenile, criminal, civil) proceedings as having been a perpetrator of child abuse, child neglect, or child sexual abuse or through the Department's investigatory process in accordance with the Abused and Neglected Child Reporting Act (Ill. Rev. Stat. 1981, ch. 23, pars. 2051 *et seq.*) as having been a perpetrator of an indicated incident of child abuse, child neglect, or child sexual abuse; or

(2) is awaiting an investigative decision or trial on such charges." 89 Ill. Adm. Code 407.10(c) (1985).

We do not believe that the regulation is unconstitutionally vague. The regulation goes on to explain what court findings are encompassed in being identified

through circuit court proceedings as a perpetrator of abuse or neglect.

The plaintiffs made the additional contention in count IV of their amended complaint that the rule violates due process because it does not provide for a pretermination hearing for one who has merely been accused of child abuse or neglect. The trial judge agreed, and he found the regulation invalid for that additional reason.

We believe that it is necessary to consider a question that the parties have not raised, whether the plaintiffs have standing to make this particular challenge to the regulation. To have standing, they "must have sustained, or be in immediate danger of sustaining, a direct injury as a result of enforcement of the challenged statute. *Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 550; *People v. Mayberry* (1976), 63 Ill. 2d 1, 6." (*Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 451; see also *Schiller Park Colonial Inn, Inc. v. Berz* (1976), 63 Ill. 2d 499, 510-11.) The plaintiffs have not alleged that they have been subjected to the particular regulation at issue or that they are in imminent danger of harm from its operation. Accordingly, we believe that it was premature for the trial court to consider here this additional challenge to the administrative regulation.

For the reasons stated, the judgment of the circuit court is reversed, and the cause is remanded for further proceedings.

*Reversed and remanded.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.