(No. 85224.—

# JOHN GUNTHORP *et al.*, Appellants, v. MARK T. GOLAN *et al.*, Appellees.

*Opinion filed December 3, 1998.*

Michael J. Cummins, Jack C. Mardoian and Bridget W. Hutchen, of Cummins & Mardoian, of Lake Forest, for appellants.

Werner Sabo and Shawn Goodman, of Sabo & Zahn, of Chicago, for appellees.

JUSTICE NICKELS delivered the opinion of the court:

The purchasers of a custom home filed suit against the architectural firm who designed the residence and the owner of that architectural firm alleging: that the architectural firm was under a contract with the builder of the residence; that the purchasers were entitled to enforce the contract as third-party beneficiaries; and that the defendants breached the contract by delivering copyright infringing plans. The circuit court of Lake County found that plaintiffs failed to introduce sufficient evidence to prove their cause of action. The appellate court affirmed on other grounds. No. 2—97—0334 (unpublished order under Supreme Court Rule 23). We allowed the petition for leave to appeal pursuant to Rule 315 (166 Ill. 2d R. 315). We affirm.

## BACKGROUND

Plaintiffs, John and Nancy Gunthorp (Gunthorps), viewed several residences designed and built by Charles Page (Page), including a home called "Echoes of a French Countryside" (Echoes), and looked into having Page design and build a home for them in Winnetka. The Gunthorps met with Page on a few occasions in May and June of 1993. On one of those occasions, Page gave the Gunthorps a four-page brochure that depicts the front and side elevations of the Echoes residence and contains floor plans for the home. The Gunthorps determined that Page would be too expensive and decided not to hire him.

The Gunthorps then contacted C.E. Russell, Inc. (Russell). Russell, a builder, suggested the Gunthorps use the Mark T. Golan Architect, LTD (Golan Firm), an architectural firm with whom Russell had previously worked. After viewing several houses designed by the

Golan Firm, the Gunthorps agreed to meet with Robert Gebblehoff (Gebblehoff), a draftsman employed by the Golan Firm. When the Gunthorps told Charles Russell of their decision, he gave the Gunthorps a document entitled "Architectural Timeframe and Requirements." That document suggests that the Gunthorps should bring several items to their first architectural design meeting including a wish list, a room-by-room description, room sizes, magazine cutouts, and photos. In November 1993, the Gunthorps met with Gebblehoff, bringing along lists of requirements and several photos and magazine clippings. The Gunthorps also gave Gebblehoff photocopies of the first three pages of the Echoes brochure that they had received from Page. The last page, which Gebblehoff did not receive, contained a picture of Page and some information about him, the plot plan for the house, and a list of additional features of the Echoes residence.

On December 23, 1993, the Gunthorps and C.E. Russell and Associates entered into a written "Architectural Agreement." Subsequently, the plans were completed and the Golan Firm was paid by Russell. On April 27, 1994, the Gunthorps entered into a "Construction Contract" with Russell to build the house as designed by the Golan Firm. Russell began construction of the home.

The foundation had been poured and first-floor framing was nearly complete on July 21, 1994, when Page filed a complaint in federal district court against, among others, the Gunthorps, Russell, and the Golan Firm. The complaint alleged copyright infringement and unfair competition. Specifically, the complaint alleged that Page authored unique architectural works that are protected by copyright and that the defendants named in the federal complaint infringed those copyrights. On July 22, 1994, the district court issued a temporary restraining order that effectively prohibited the defendants from constructing or continuing to construct the Gunthorp

residence. The temporary restraining order was extended without a hearing on July 26, 1994. The Gunthorps entered into a settlement agreement with Page on August 24, 1994, as part of which the Gunthorps paid Page $55,500. The settlement agreement also required the Gunthorps to make certain changes to the front elevation of their home. The federal case was then dismissed against all defendants.

The Gunthorps used another architect to draw up the changes so that the residence was acceptable to Page. Russell agreed to continue to build the home if the Gunthorps agreed to sign change order 21, which contains language that purports to release Russell and his subcontractors. After the Gunthorps signed the change order, Russell proceeded with construction on the residence.

The Gunthorps filed the complaint that led to the instant appeal on August 4, 1995. The complaint alleges that Mark T. Golan individually (Golan) and the Golan Firm (collectively, defendants) breached a contract between the defendants and Russell by delivering plans that violate the property rights of Page. Russell is not named in the complaint. The Gunthorps allege that the contract was entered into for the Gunthorps' benefit and that they are entitled to relief as third-party beneficiaries. As damages, the Gunthorps seek the sum that they paid to settle the federal lawsuit, legal fees, and other unspecified damages.

The defendants moved to dismiss the complaint and for summary judgment, urging that the Gunthorps were not third-party beneficiaries and that change order 21 released Golan and the Golan Firm. The circuit court denied the motions and after a bench trial entered judgment for defendants. The trial court found that the Gunthorps failed to prove their case and that the cause of action was barred by the Illinois Joint Tortfeasor Con-

tribution Act (740 ILCS 100/.01 *et seq.* (West 1996)). We observe that the Gunthorps' cause of action sounds in contract, not in tort.

The appellate court affirmed on other grounds, finding that the Gunthorps failed to prove that they were third-party beneficiaries, that the Gunthorps released the Golan Firm from liability pursuant to the language of change order 21, and that the trial court did not err in determining that the design of the Gunthorp residence did not infringe Page's copyright. The Gunthorps appeal and defendants cross-appeal for sanctions, alleging that the current appeal is frivolous.

## DISCUSSION

We first address jurisdiction. Defendants assert that this court does not have jurisdiction in the present case because the United States Congress vested exclusive subject matter jurisdiction over copyright matters in the federal judiciary. 28 U.S.C. § 1338 (1994). However, we note that this not a "civil action arising under an Act of Congress relating to *** copyrights," but is an action in contract arising under Illinois law that incidentally contains allegations of delivering copyright infringing plans as a breach of that contract. In addition, although the trial court in the instant case made reference to the plaintiff's seeking indemnity in its findings, this is not an action in indemnity or contribution, nor do we opine as to the availability of such relief under federal law.

In this appeal, the Gunthorps raise the following issues: (1) whether the appellate court erred in deciding the third-party beneficiary issue in favor of the defendants; (2) whether the Gunthorps were required, under their contract cause of action, to prove that Page would have prevailed in the federal copyright infringement lawsuit; (3) whether the appellate court erred in finding that the Gunthorps had released the Golan Firm by the language of change order 21; and (4) whether the appel-

late court applied the correct test in determining copyright infringement. A trial court may be affirmed on any basis that appears in the record without regard to whether the trial court relied upon such ground or whether the trial court's rationale was correct. *Messenger v. Edgar*, 157 Ill. 2d 162, 177 (1993). Because we find that the Gunthorps released the defendants, we affirm the lower courts and need not address the remaining issues raised by the Gunthorps.

We first note that the record is devoid of any evidence of a contract between Russell and Mark T. Golan individually. Accordingly we find that the Gunthorps have not proven a cause of action for breach of contract against Mark T. Golan individually.

The Gunthorps make two arguments with regard to the release. First, they contend that there is evidence that the language inserted in the change order was a deliberate contrivance to trick the Gunthorps into releasing the Golan Firm. Second, they contend that the Golan Firm is not a subcontractor to Russell and is therefore not covered by the release.

All of the change orders signed by the parties, with the exception of change order 21, included the following language:

"THE HOMEOWNER(S) AUTHORIZE THE ABOVE CHANGES TO BE INCORPORATED IN THEIR STRUCTURE AND ACCEPT ALL RESPONSIBILITY FOR ERRORS RESULTING FROM HEREIN. THE HOMEOWNER(S) ALSO RECOGNIZE THAT THESE CHANGES ARE MADE AS AN ACCOMMODATION TO THE HOMEOWNERS(S) AND WARRANT THAT C.E. RUSSELL & ASSOCIATES AND ITS *REPRESENTATIVES* SHALL BE HELD HARMLESS FROM ALL LIABILITY ARISING FROM SAID CHANGES. THE HOMEOWNER(S) SHALL ALSO BEAR ANY AND ALL COSTS ARISING FROM THE CORRECTION OF ERRORS RESULTING FROM SAID CHANGES." (Emphasis added.)

Change order 21, which covered the changes required

under the settlement agreement entered by the Gunthorps and Page, contained the following language:

"THE HOMEOWNERS AUTHORIZE THE ABOVE CHANGES TO BE INCORPORATED IN THEIR STRUCTURE AND ACCEPT ALL RESPONSIBILITY FOR ERRORS RESULTING FROM *THE 9/13/94 PLAN*. THE HOMEOWNERS ALSO RECOGNIZE THAT THESE CHANGES ARE MADE AS AN ACCOMMODATION TO THE HOMEOWNERS AND AGREE THAT C.E. RUSSELL & ASSOCIATES, LTD., *ITS AGENTS AND SUB-CONTRACTORS*, ARE HEREBY *RELEASED AND HELD HARMLESS FROM ALL LIABILITY ARISING FROM SAID CHANGES AND ANY CLAIM ARISING OUT OF THE FACTS AND CIRCUMSTANCES WHICH GAVE RISE TO, AND RESULTED IN SUCH CHANGES*." (Emphasis added.)

Also in evidence is a fax cover sheet sent from Russell to Mark T. Golan along with a copy of change order 21 that states "[the] language inserted at the bottom and the acceptance thereof would suffice in court. It still doesn't stop them from trying, however." The Gunthorps argue that the insertion of different language in change order 21 coupled with the fax transmission indicates that the release was not fairly made. The Gunthorps cite *Willis v. Reum*, 64 Ill. App. 3d 146, 147 (1978), and *Northern Trust Co. v. Brentwood North Nursing & Rehabilitation Center*, 225 Ill. App. 3d 1039 (1992), in support of the proposition that a release does not prevent a court from looking into the circumstances to ascertain whether the release was fairly made and accurately reflects the intent of the parties.

However, the cases cited by the Gunthorps are not helpful in the instant case. The *Willis* court affirmed the trial court's grant of a motion to dismiss a personal injury claim based on the validity of a release. The court found that "releases of personal injury claims may be set aside where there is a mutual mistake of fact and the circumstances, when finally known, present unconscionable

results." *Willis*, 64 Ill. App. 3d at 147. Despite the presence of a mutual mistake of fact by the parties entering into the agreement, the *Willis* court, reasoning that the results were not unconscionable, sustained the validity of the release. In *Northern Trust*, the court, in *dicta*, cites a portion of *Gutierrez v. Schultz*, 109 Ill. App. 3d 372, 375-76 (1982), that quotes the pertinent language from *Willis* discussed above. The Gunthorps have not asserted that the parties in the instant case were under a mutual mistake of fact or that any other defense exists against the release. Therefore, we will not set aside the release.

This court has stated:

"A release is a contract, and therefore is governed by contract law. [Citation.] The intention of the parties to contract must be determined from the instrument itself, and construction of the instrument where no ambiguity exists is a matter of law. [Citation.]" *Farm Credit Bank v. Whitlock*, 144 Ill. 2d 440, 447 (1991).

Change order 21 is unambiguous. It states "[C.E. Russell's] subcontractors, are hereby released *** from all liability *** arising out of the facts and circumstances which gave rise to and resulted in such changes." A subcontractor is "[o]ne who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance." Black's Law Dictionary 1424 (6th ed. 1990). Russell contracted with the Gunthorps to provide architectural plans. Russell then contracted with the Golan Firm to perform the act of drawing the plans.

The Gunthorps next contend that the Golan Firm is not released because the release only covers subcontractors to the construction contract. They argue that the Golan Firm was a subcontractor to the architectural agreement and not to the construction contract. We find that the language of the release encompasses anyone falling into the category of Russell's subcontractors, not just those under the construction contract. Therefore, we find that change order 21 effectively released the Golan Firm.

Finally, the defendants request that we impose sanctions against the Gunthorps under Rule 375(b) (155 Ill. 2d R. 375(b)). Under Rule 375(b) sanctions may be imposed if an appeal is frivolous or not taken in good faith. An appeal is considered frivolous if it is "not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." 155 Ill. 2d R. 375(b). The defendants, citing *State Farm Fire & Casualty Co. v. Miller Electric Co.*, 231 Ill. App. 3d 355, 360 (1992), assert that an appeal will be deemed frivolous if a reasonably prudent attorney would not in good faith have brought such an appeal. After a thorough review of the record, we find that under an objective standard, a reasonably prudent attorney could have brought this appeal. Accordingly, we decline to enter sanctions.

For the foregoing reasons, we affirm the judgment of the appellate court.

*Appellate court judgment affirmed.*