THIRD DIVISION

June 28, 2002

No.  1-01-3827

AIDA, an Illinois not-for-profit corporation, )

) Appeal from the

Plaintiff-Appellant,
 
 ) Circuit Court of
 

) Cook County
. 

v. ) 

)

TIME WARNER ENTERTAINMENT )

COMPANY, L.P., a Delaware limited ) Honorable

partnership,
 ) 
Richard A. Siebel,

Defendant-Appellee.
 ) 
Judge Presiding.

JUSTICE SOUTH delivered the opinion of the court:

This case arises from the trial court's order granting Time Warner Entertainment Company's (Time Warner) motion to dismiss the complaint of the American Italian Defense Association (AIDA).

AIDA, an Illinois not-for-profit organization made up of over 100 members, was formed for the following purpose, set forth in its articles of incorporation:

"The corporation is organized *** for *** educational purposes, to-wit, the education of the public concerning the history, culture, language and customs of immigrants to the United States from Italy, and the artistic, political, scientific and educational contributions made by such persons to American society; and further including, for such purposes, the opposition by lawful means of all forms of negative stereotyping, and defamation of Italian Americans."

On April 5, 2001, AIDA filed a complaint for declaratory judgment against Time Warner.  In its complaint, AIDA sought a declaratory judgment from the trial court "that various episodes of The Sopranos alone or the series when taken as a whole, breaches the Individual Dignity Clause of the Illinois Constitution with respect to Italian Americans individually or as a group by reason of, or by reference to, the ethnic affiliation of the characters portrayed in that program."

The individual dignity clause of the Illinois Constitution provides:

"
Individual Dignity.   

To promote individual dignity, communications that portray criminality, depravity or lack of virtue in, or that incite violence, hatred, abuse or hostility toward, a person or group of persons by reason of or by reference to religious, racial, ethnic, national or regional affiliation are condemned."  Ill. Const. 1970, art. I, §20.

In its complaint, AIDA does not seek damages nor does it seek to restrain Time Warner from airing The Sopranos on HBO.

AIDA further asserts in its complaint that it has "standing" to file this lawsuit on behalf of and for the benefit of its members individually and by virtue of the right to remedy and justice clause of the Illinois Constitution.  The right to remedy and justice clause provides:

"
Right to Remedy and Justice.
   

Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation.  He shall obtain justice, by law, freely, completely, and promptly."  Ill. Const. 1970, art. I, §12.

On May 21, 2001, Time Warner filed a motion under section 2-615 of the Code of Civil Procedure to dismiss AIDA's complaint for failure to state a cause of action.  735 ILCS 5/2-615 (West 2000).  Time Warner argued that AIDA's complaint should be dismissed because (1) the individual dignity clause does not create a judicially enforceable private right of action, but was "purely hortatory" in nature; and (2) if the individual dignity clause did create a private right of action, AIDA's efforts would violate both the freedom of speech provisions of the state and federal constitutions.

On August 29, 2001, the trial court held hearings on Time Warner's section 2-615 motion to dismiss.  During the hearing, although the issue of whether AIDA had standing to file suit against Time Warner had not been raised by Time Warner in the trial, the trial court raised the issue 
sua sponte
.  Both counsel for AIDA and Time Warner were allowed to address the issue of standing before the trial court.

On September 19, 2001, the trial court issued a memorandum opinion and order granting Time Warner's motion to dismiss.  In its opinion and order, the trial court reasoned that "the basis for AIDA's standing to bring its claim is unclear.  AIDA has not alleged that it has an interest that is separate and distinct from that of the general public."  The court held that "other than AIDA's citation to section 103.10(b) of the Not for Profit Corporation Act, which does not by itself confer standing, there is no basis for standing that can be ascertained from the Complaint other than AIDA's claim that it represents the interest of Italian Americans."  Finally, the court reasoned that "the plain language of the Individual Dignity Clause clearly demonstrates that the Clause is merely hortatory[,] *** [it] does not expressly state that it creates a private cause of action."

On October 16, 2001, AIDA filed the instant appeal.

AIDA raises three issues on appeal: (1) whether Time Warner waived the issue of "standing" by failing to raise it in the trial court; (2) whether a request only for declaratory relief based on the verdict of a jury is an appropriate remedy for effecting the individual dignity clause in the Bill of Rights of the Illinois Constitution; and (3) whether the individual dignity clause contained in the Bill of Rights of the Illinois Constitution is simply a platitudinous "constitutional sermon" without any legal effect.

Prior to addressing AIDA's issue with regard to standing, we must note that Time Warner filed a section 2-615 motion to dismiss in this case. 
 A section 2-615 motion admits all well-pleaded facts and attacks only the legal sufficiency of the complaint (735 ILCS 5/2-615 (West 2000);  
Janes v. First Federal Savings & Loan Ass'n of Berwyn
, 57 Ill. 2d 398, 406, 312 N.E.2d 605 (1974))
;  a section 2-619 motion admits the legal sufficiency of the complaint, but raises defects, defenses or other affirmative matter appearing on the face of the complaint or established by external submissions which defeat the action (735 ILCS 5/2-619 (West 2000); 
 
Joseph v. Chicago Transit Authority
, 306 Ill. App. 3d 927, 930, 715 N.E.2d 733, 736 (1999)).  Since lack of standing is generally considered an affirmative defense, it may be raised under section 2-619.  
Glisson v. City of Marion
, 188 Ill. 2d 211, 220, 720 N.E.2d 1034, 1039 (1999).  
However, this court may affirm a correct dismissal by the trial court for any reason appearing in the record.  
Gunthorp v. Golan
, 184 Ill. 2d 432
, 438, 704 N.E.2d 370 (1998); see also 
Geick v. Kay
, 236 Ill. App. 3d 868, 873, 603 N.E.2d 121 (1992) (we note that the order the plaintiff appeals from does not specify whether the dismissal of the complaint was pursuant to section 2-615 or section 2-619; however, we may affirm a correct decision for any reason appearing in the record regardless of the basis relied on by the trial court).
  
As such, even though Time Warner never filed a section 2-619 motion to dismiss, we may still affirm the trial court's dismissal if the record indicates that there were other bases in the record that could have supported the dismissal. 
 

Our review of a dismissal pursuant to both sections 2-615 and 2-619 is 
de novo
.  
T&S Signs, Inc. v. Village of Wadsworth
, 261 Ill. App. 3d 1080, 1084, 634 N.E.2d 306 (1994).

In this case, AIDA urges that due to Time Warner's failure to raise this issue in its motion to dismiss, it has been waived for purposes of appeal.  AIDA cites 
Greer v. Illinois Housing Development Authority
, 122 Ill. 2d 462, 524 N.E.2d 561 (1988), in support of its position.  In 
Greer
, the Illinois Supreme Court stated that "lack of standing in a civil case is an affirmative defense, which will be waived if not raised in a timely fashion in the trial court."  
Greer
, 122 Ill. 2d at 508.

Although we agree that standing is an affirmative defense that normally
 should be raised in the trial court, we will address the issue in this case for several reasons.  First, 
the facts in 
Greer
 are distinguishable from the facts in the instant case.  The supreme court specifically noted that in 
Greer
, not only did the developers fail 
to present the issue of standing at trial, but the trial court record was completely devoid of a factual basis for determining the issue of standing.  
Greer
, 122 Ill. 2d at 509.
  There were no oral arguments on the issue of standing in the trial court and the issue was never raised by the trial court.

In this case, during the hearings on Time Warner's motion to dismiss, the trial court raised the issue of standing, 
sua sponte
, and both sides were given the opportunity to address the issue fully at the hearing.  Furthermore, although we recognize that it is not AIDA's burden to prove standing as part of its 
prima facie
 case, AIDA specifically asserted in its complaint that it has standing to file this lawsuit on behalf of and for the benefit of its members individually and by virtue of the right to remedy and justice clause of the Illinois Constitution
.  As such, unlike the facts in 
Greer
, the trial court was provided with the factual and legal basis upon which AIDA asserts standing to file this lawsuit.  

Second, the waiver rule is a limitation on the parties and not the jurisdiction of this court.  
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 518, 732 N.E.2d 528 (2000);  
M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center
, 198 Ill. 2d 249, 764 N.E.2d 1 (2001)
.

Keeping in mind that our Illinois Supreme Court has stated that this court may affirm a correct dismissal for any reason appearing in the record (
Gunthorp
, 184 Ill. 2d at
 438), we will address the issue of standing.
  See also 
Pre-School Owners Ass'n of Illinois,  Inc. v. Department of Children & Family Services
, 119 Ill. 2d 268, 518 N.E.2d 1018 (1988) (the court stated that it was necessary to 
consider a question that the parties have not raised, whether the plaintiffs  have standing to make this particular challenge to the regulation); 
Lyons v. Ryan
, 324 Ill. App. 3d 1094, 1101, 756 N.E.2d 396 (2001) (the standing issue here is both jurisdictional and constitutional in nature; the fact that standing is an affirmative defense under section 2-619 does not preclude it from being jurisdictional).

In Illinois, to have standing, a plaintiff seeking declaratory relief must present an actual controversy between adverse parties as to which controversy the plaintiff is not merely curious or concerned about the outcome, but possesses some personal claim, status, or right.  The alleged injury must be distinct and palpable, and directly traceable to the defendant's actions and substantially likely to be prevented or redressed by the grant of such relief.  
Greer
, 122 Ill. 2d 462
.

First, the requirement that the controversy be "actual" is merely meant to distinguish justiciable issues from abstract or hypothetical disputes.  
Miller v. County of Lake
, 79 Ill. 2d 481, 487, 404 N.E.2d 481 (1980);  
Illinois Gamefowl Breeders Ass'n v. Block
, 75 Ill. 2d 443, 451-52, 389 N.E.2d 529 (1979).  
"Actual" does not mean that a wrong must have been committed and an injury inflicted; rather, the term requires a showing that the underlying facts and issues of the case are not moot or premature with the result that a court passes judgment upon mere abstract propositions of law, renders an advisory opinion, or gives legal advice concerning future events.  
Gamefowl
, 75 Ill. 2d at 450.
  The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof.

In addition to the requirement of an actual controversy, in order to have standing to bring an action for declaratory judgment, the party seeking the declaration be interested in the controversy.  
Gamefowl
, 75 Ill. 2d at 450.  As used in that phrase, "interested" does not mean merely having a curiosity about or a concern for the outcome of the controversy. 
Gamefowl
, 75 Ill. 2d at 450.  The party requesting the declaration must possess a personal claim, status, or right that is capable of being affected by the grant of such relief.  
Greer
, 122 Ill. 2d at 493
; 
Gamefowl
, 75 Ill. 2d at 450-51.  Although the requirement of standing is meant to preclude uninterested persons from suing, it is not meant to preclude a valid controversy from being litigated.  
Kluk v. Lang
, 125 Ill. 2d 306, 315, 531 N.E.2d 790 (1988).  The dispute must, therefore, touch the legal relations of parties who stand in a position adverse to one another.  
Since standing is a component of justiciability, it must be defined on a case-by-case basis.  
In re Marriage of Rodriguez
, 131 Ill. 2d 273, 280, 545 N.E.2d 731 (1989);  
Messenger v. Edgar
, 157 Ill. 2d 162, 623 N.E.2d 310 (1993).

In this case, AIDA alleges that The Sopranos portrays Italian Americans in a negative light.  However, as the trial court noted, its complaint does not allege a "distinct and palpable" injury to a particular Italian American that is traceable to The Sopranos.  Plaintiff's complaint merely states that it is brought to "vindicate the individual dignity of Italian Americans." 

Furthermore, plaintiff specifically states in its complaint that "AIDA seeks neither damages for [Time Warner Entertainment's] actions nor a restraint on the showing of The Sopranos."  There is absolutely no injury identified by AIDA that could possibly be prevented or redressed by any possible grant of relief.  See 
Greer
, 122 Ill. 2d at 493
.  As the trial concluded, "no ruling in [AIDA's] favor would alter the current position of the parties."  Therefore, we find that plaintiff lacks standing to bring this lawsuit.

AIDA's second argument on appeal is that it is consistent with the purpose of declaratory relief for a jury to render a verdict on whether one or more episodes of The Sopranos violates the terms of the individual dignity clause and, if so, a trial judge may enter a declaratory judgment on the verdict.  It asserts that it is appropriate to request a court to provide a declaratory remedy interpreting the meaning of a state constitutional provision.

The basis for plaintiff's reliance on the Uniform Declaratory Judgment Act (735 ILCS 5/2-701 (West 1998)) is unclear.  Even if brought under the Act, a case cannot and should not be reviewed merely to resolve an abstract question, to establish a precedent, or to render a judgment to guide future potential litigation.   
Adams v. Meyers
, 
250 Ill. App. 3d 477, 487, 
620 N.E.2d 1298 (1993).
  It is true that the Act should be applied liberally (
Gamefowl
, 75 Ill. 2d at 452, 468), the Act requires that there be an "actual controversy" and that the party seeking relief have a tangible, legal interest in that controversy.  
Underground Contractors Ass'n v. City of Chicago
, 66 Ill. 2d 371, 375-76, 362 N.E.2d 298 (1977); 735 ILCS 5/2-701 (West 1992).  
The case must "present a concrete dispute 
admitting of an immediate and
 
definitive determination of the parties' rights
, the resolution of which will aid in the termination of the controversy or some part thereof."  (Emphasis added.)  
Underground Contractors Ass'n
, 66 Ill. 2d at 375.

As previously stated, 
there can be no immediate and definitive determination of the parties' rights that would be terminated by an entry of declaratory relief because plaintiff has failed to articulate a basis upon which a proper cause of action can be asserted.

AIDA's third argument is that the plain meaning of the individual dignity clause of the Illinois Constitution precludes a complete hortatory interpretation when read in conjunction with the right to remedy and justice clause of the constitution.  We disagree.

The individual dignity clause of the Illinois Constitution provides:

"
To promote individual dignity, communications that portray criminality, depravity or lack of virtue in, or that incite violence, hatred, abuse or hostility toward, a person or group of persons by reason of or by reference to religious, racial, ethnic, national or regional affiliation are condemned."  Ill. Const. 1970, art. I, §20.

As plaintiff states in its brief, when ascertaining legislative intent, the court should first look to the plain meaning of the legislative texts without resorting to other aids for construction.  
Envirite Corp. v. Illinois Environmental Protection Agency
, 158 Ill. 2d 210, 216-17, 632 N.E.2d 1035 (1994).

In 
Irving v. J.L. Marsh, Inc.
,  46 Ill. App. 3d 162, 360 N.E.2d 983 (1977), a Second District case, a customer brought action against the owner of a retail store to recover damages for libel, intentional infliction of severe emotional distress and for violation of the individual dignity clause for communications that portray abuse or hostility toward a person by reason of racial or ethnic affiliations.  The trial court dismissed plaintiff's complaint.  
Irving
,  46 Ill. App. 3d at 164.  The appellate court affirmed the trial court's dismissal, holding that article I, section 20, did not create a cause of action for conduct of a retail store employee who referred to a customer as an "arrogant nigger."
    
Irving
,  46 Ill. App. 3d at 165
. 
  The court
 stated:

"We agree with plaintiff that section 20 is a clear expression of the public policy in this  State.  But, however laudatory or commendable the purposes or policies expressed by these words are, section 20 was never intended to establish any new cause of action.  The following passage from the Bill of Rights Committee Report, which is set out in the Constitutional Commentary to section 20, clearly demonstrates this:

'[Again [Victor Arrigo, the provisions supervisor] want to reiterate, the individual dignity clause in no way qualifies or modifies the constitutional rights of free speech and press.]'
 The provision creates no private right or cause of action
 ***.  
It is purely hortatory
, "a constitutional sermon."  Like a preamble, such a provision is not an operative part of the Constitution.  It is included to serve a teaching purpose, to state an ideal or principle to guide the conduct of government and individual citizens.'  (Ill. Ann. Stat., Ill. Const. 1970, art.  
I, §20, Constitutional Commentary, at 676 (Smith Hurd 1971))."  (Emphasis added.) 
Irving
,  46 Ill. App. 3d at 165.
  

We agree that the language of article I, section 20, is hortatory and does not create a cause of action.   The plain and ordinary meaning of the clause is to condemn such communications, not to make them unlawful.  The legislature is merely expressing its distaste and disapproval of such communications.

Plaintiff further argues that the right to remedy and justice clause of the Illinois Constitution negates the completely hortatory meaning of the individual dignity clause.  

However, Illinois case law is clear that this clause is merely an expression of philosophy and not a mandate that a certain remedy be provided in any specific form.  See 
Segers v. Industrial
 
Comm'n
, 191 Ill. 2d 421, 435, 732 N.E.2d 488 (2000) (the provision in the Illinois Constitution, however, is merely  "an expression of a philosophy and not a mandate that a 'certain remedy' be provided in any specific form"), 
DeLuna v. St. Elizabeth's Hospital
, 147 Ill. 2d 57, 72, 588 N.E.2d 1139 (1992), quoting 
Sullivan v. Midlothian Park District
, 51 Ill. 2d 274, 277, 281 N.E.2d 659 (1972) ("an expression of a philosophy and not a mandate that a 'certain remedy' be provided in any specific form or that the nature of the proof necessary to the award of a judgment or decree continue without modification");  
Bart v. Board of Education of City of Chicago
, 256 Ill. App. 3d 880, 886, 632 N.E.2d 39 (1993) (article I, section 12, has been construed as an expression of philosophy and does not mandate the creation of an action and remedy where one did not formerly exist).

Based upon the foregoing, the judgment of the circuit court is affirmed.

Affirmed.

HALL, P.J., and CERDA, J., concur.