2022 IL App (2d) 210234
No. 2-21-0234
Opinion filed June 29, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE NORTHWESTERN ILLINOIS AREA AGENCY ON AGING, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 20-MR-38 |
| PAULA BASTA, in Her Official Capacity as Director of Aging, | ) ) ) | Honorable Lisa Renae Fabiano, |
| Defendant-Appellee. | ) ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Presiding Justice Bridges and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, the Northwestern Illinois Area Agency on Aging, filed in the circuit court of Winnebago County a three-count complaint against defendant, Paula Basta, in her capacity as the director of the Department on Aging (Department). In the complaint, plaintiff alleged that the Department had enacted administrative rules that were not adopted pursuant to the procedure mandated by the Illinois Administrative Procedure Act (Act) (5 ILCS 100/1-1 *et seq.* (West 2020)). Plaintiff sought the entry of an order stating that the rules were invalid. Defendant filed a motion to dismiss plaintiff's complaint, pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)), alleging that the matters complained of were untimely raised

or exempt from the Act's rulemaking provisions (see 735 ILCS 5/2-615, 2-619(a)(5), (a)(9) (West 2020)). Following a hearing, the trial court dismissed counts I and II of the complaint without prejudice, dismissed count III with prejudice, and granted plaintiff leave to file an amended complaint.

¶ 2    Plaintiff subsequently filed a six-count, first amended complaint. Plaintiff again alleged that the Department had enacted various administrative rules that were not adopted pursuant to the procedure mandated by the Act and again sought entry of an order stating that the rules were invalid. Defendant again responded with a motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020)). Defendant alleged that the matters raised in the first amended complaint were untimely, were exempt from the Act's rulemaking provisions, or were not rules at all, and she alleged that plaintiff lacked standing to raise certain claims (735 ILCS 5/2-615, 2-619(a)(5), (a)(9) (West 2020)). The trial court dismissed with prejudice counts I through IV of the first amended complaint, pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). The trial court dismissed with prejudice counts V and VI, pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)). Thereafter, plaintiff filed a notice of appeal challenging the dismissal of count III of its original complaint and the dismissal of all six counts of its first amended complaint. For the reasons set forth below, we affirm.

¶ 3                              I. BACKGROUND

¶ 4                              A. The Parties

¶ 5    Defendant is the current director of the Department. The Department administers programs for senior citizens in Illinois, including receiving and disbursing federal funds made available to it under the legislation originally enacted as the Older Americans Act of 1965, now codified as amended at 42 U.S.C. § 3001 *et seq.* (Older Americans Act). See 42 U.S.C. § 3025(a)(1) (2018)

(requiring states to designate an agency to receive Older Americans Act funds); 20 ILCS 105/4 (West 2020) (providing that the Department "shall be the single State agency for receiving and disbursing federal funds made available under the 'Older Americans Act.' "). In implementing the Older Americans Act, the Department designates public and private nonprofit organizations throughout Illinois as "area agenc[ies] on aging" (AAAs), each of which provides services to senior citizens within a specific geographic area. 42 U.S.C. § 3025(a)(2)(A) (2018); 20 ILCS 105/3.07, 3.08 (West 2020). Under the Older Americans Act, the United States Department of Health and Human Services (HHS) distributes federal funds to the Department, which then distributes those funds to the AAAs. 42 U.S.C. § 3025(a) (2018); 20 ILCS 105/3.07, 3.08, 4 (West 2020). In turn, AAAs "make subgrants or contracts to service providers" that offer various services to older adults. 45 C.F.R. § 1321.1(c) (2020). Plaintiff, a private nonprofit entity, is the AAA for Area 1, which comprises the counties of Jo Daviess, Stephenson, Winnebago, Boone, Carroll, Ogle, De Kalb, Whiteside, and Lee. 20 ILCS 105/3.08 (West 2020).

¶ 6    The Department may also disburse Older Americans Act funds for the State Long-Term Care Ombudsman program, which is designed to investigate and act on complaints regarding long-term care facilities. 42 U.S.C. §§ 3030d(a)(10), 3058g(a)(3) (2018); 45 C.F.R. § 1321.63(a)(5) (2020); 20 ILCS 105/4.04 (West 2020). Although the Department appoints the State Long-Term Care Ombudsman (Ombudsman) and operates the Ombudsman's office, that office is separate from the Department's other divisions. 42 U.S.C. § 3058g(a)(1)(A) (2018); 45 C.F.R. § 1324.11(b)(1) (2020); 89 Ill. Adm. Code 270.134 (2019).

¶ 7                    B. The Illinois Administrative Procedure Act

¶ 8    The Act sets forth the requirements for the promulgation of rules by administrative agencies. 5 ILCS 100/1-1 *et seq.* (West 2020). The Act applies to the Department. 20 ILCS

105/5.02 (West 2020) (stating that the provisions of the Act "are hereby expressly adopted and shall apply to all administrative rules and procedures of the Department [on Aging]"). The Act defines a "rule" as an "agency statement of general applicability that implements, applies, interprets, or prescribes law or policy." 5 ILCS 100/1-70 (West 2020). However, the term does not include "statements concerning only the internal management of an agency and not affecting private rights or procedures available to persons or entities outside the agency," "informal advisory rulings," "intra-agency memoranda," or "the prescription of standardized forms." 5 ILCS 100/1-70 (West 2020). Moreover, while the Act requires administrative agencies to comply with its rulemaking provisions "[b]efore the adoption, amendment, or repeal of any rule" (5 ILCS 100/5-35(a) (West 2020)), the Act's rulemaking provisions do not apply to (1) "a matter relating solely to agency management or personnel practices or to public property, loans, or contracts" (5 ILCS 100/5-35(c) (West 2020)) or (2) "the adoption of any rule required by federal law in connection with which the Department is precluded by law from exercising any discretion" (20 ILCS 105/5.02 (West 2020)).

¶ 9    Administrative rulemaking under the Act involves a three-step process. See *Department of Revenue v. Civil Service Comm'n*, 357 Ill. App. 3d 352, 356-57 (2005); *Weyland v. Manning*, 309 Ill. App. 3d 542, 543-44 (2000). The first step, known as the first notice period, gives notice of the proposed rule in the Illinois Register. 5 ILCS 100/5-40(b) (West 2020); *Weyland*, 309 Ill. App. 3d at 543. The public has 45 days from the date the notice is published in which to comment. 5 ILCS 100/5-40(b) (West 2020); *Weyland*, 309 Ill. App. 3d at 543. If during the first 14 days of the first notice period the agency proposing the rule receives a request for a public hearing from 25 interested persons, an association representing at least 100 interested persons, the Governor, the Joint Committee on Administrative Rules (JCAR), or a unit of local government that may be

affected, the agency is required to hold a public hearing. 5 ILCS 100/5-40(b) (West 2020); *Weyland*, 309 Ill. App. 3d at 543.

¶ 10    At the end of the first notice period begins the second notice period, during which the agency must submit certain information to JCAR in a document called a second notice. 5 ILCS 100/5-40(c) (West 2020); 1 Ill. Adm. Code 220.600 (1994); *Weyland*, 309 Ill. App. 3d at 544. JCAR is a bipartisan, bicameral legislative-support-services agency that reviews proposed and existing rules as well as agencies' compliance with the rulemaking procedure. 5 ILCS 100/5-90 (West 2020); 25 ILCS 130/1-5, 2-1 (West 2020); *Department of Revenue*, 357 Ill. App. 3d at 356; *Weyland*, 309 Ill. App. 3d at 544. The second notice period is also known as the legislative review period. *Department of Revenue*, 357 Ill. App. 3d at 356; *Weyland*, 309 Ill. App. 3d at 544 (citing Robert John Kane, *Specific Rulemaking Procedures in Illinois*, in Illinois Administrative Law § 5.19 (Ill. Inst. for Cont. Legal Educ. 1991)). During this time, JCAR reviews the second notice submitted by the agency. 1 Ill. Adm. Code 220.600 (1994); *Weyland*, 309 Ill. App. 3d at 544. The Illinois Administrative Code sets forth certain requirements that a second notice must meet for JCAR to accept it. 1 Ill. Adm. Code 220.600 (1994); *Weyland*, 309 Ill. App. 3d at 544. If the second notice is not satisfactory, JCAR may reject it. 1 Ill. Adm. Code 220.600 (1994); *Weyland*, 309 Ill. App. 3d at 544. After reviewing the second notice, JCAR may submit questions to the agency. 1 Ill. Adm. Code 220.700(b) (1994); *Weyland*, 309 Ill. App. 3d at 544. Upon completion of its review, JCAR will file either a certification of no objection, a statement of recommendation that the agency pursue some further action, a statement of objection to the proposed rule, or a statement prohibiting the filing of the proposed rule. 5 ILCS 100/5-40(c) (West 2020); 1 Ill. Adm. Code 220.1000 (1994); *Weyland*, 309 Ill. App. 3d at 544.

¶ 11    The third and final step is adoption of the rule. *Department of Revenue*, 357 Ill. App. 3d at 356-57; *Weyland*, 309 Ill. App. 3d at 544. An agency may file a proposed rule for adoption after (1) the second notice period has expired, (2) the agency has received a certification of no objection from JCAR, or (3) the agency has responded to a statement of objection from JCAR. 5 ILCS 100/5-40(d) (West 2020); 1 Ill. Adm. Code 220.1100 (1994); *Weyland*, 309 Ill. App. 3d at 544. A proceeding to contest any rule on the ground of noncompliance with the procedural requirements of the Act's rulemaking provisions "must be commenced within 2 years from the effective date of the rule." 5 ILCS 100/5-35(b) (West 2020); *Filliung v. Adams*, 387 Ill. App. 3d 40, 53 (2008).

¶ 12                    C. Plaintiff's Original Complaint

¶ 13    On January 16, 2020, plaintiff filed a three-count complaint against defendant. The complaint alleged that defendant "is using invalid rules to regulate the conduct of [plaintiff] and [plaintiff's] grantees." Specifically, count I alleged that the Department's "Area Agencies on Aging Policies and Procedures Manual" (Manual), which comprises 12 sections and approximately 400 pages, is invalid because it was not adopted pursuant to the Act's rulemaking provisions (5 ILCS 100/art. 5 (West 2020)). Similarly, counts II and III alleged that section 1000 of the Manual, titled "Evaluation, Monitoring and Special Reviews" (Monitoring Policy), and the Department's "Area Agency on Aging Meetings Transparency Policy" (Transparency Policy), respectively, are invalid rules because they were not adopted pursuant to the Act's rulemaking provisions. The Monitoring Policy "describes the purpose, approach and procedures for conducting risk assessments, evaluations, monitoring activities and special reviews of the [AAAs] and the [AAAs'] evaluation of subgrantees and subcontractors." The Transparency Policy provides that all board and advisory council meetings of AAAs "shall be held in a transparent manner in facilities which are readily accessible and large enough to accommodate the public and applicable

Department personnel," and it requires that the meetings comply with certain provisions enumerated therein. Plaintiff requested an order stating that the entire Manual is invalid, the Monitoring Policy is invalid, and the Transparency Policy is invalid. Plaintiff attached to its complaint copies of the Monitoring Policy and the Transparency Policy. Other than the Monitoring Policy, no other portions of the Manual were appended to the complaint.

¶ 14 On April 2, 2020, defendant filed a motion to dismiss plaintiff's complaint, pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020) (allowing motions with respect to pleadings under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) and motions for involuntary dismissal or other relief under section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)) to be filed together as a single motion)). Defendant argued that count I of the complaint should be dismissed as untimely, pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2020)), because all but certain portions of the Monitoring Policy became effective more than two years prior to the filing of the complaint. See 5 ILCS 100/5-35(b) (West 2020) (providing that any "proceeding to contest any rule on the ground of non-compliance with the procedural requirements of [the Act] must be commenced within 2 years from the effective date of the rule"). Defendant also contended that, under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2020)), count I should be dismissed with regard to section 900 of the Manual, pursuant to the Act's contract exception, because section 900 is explicitly incorporated in a 2018 grant agreement between plaintiff and the Department. See 5 ILCS 100/5-35(c) (West 2020) (providing that the Act's rulemaking provisions "do not apply to a matter relating solely to agency management or personnel practices or to public property, loans, or contracts"). Defendant argued that count II should be partially dismissed as untimely, pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2020)), because only certain portions of the Monitoring Policy

took effect within two years prior to the filing of plaintiff's complaint. See 5 ILCS 100/5-35 (West 2020). Defendant argued that count III should be dismissed pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2020)), because the Transparency Policy is not part of the Manual and is not a policy or rule of the Department.

¶ 15    Defendant also argued that counts I and II of the complaint should be dismissed pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). With respect to count I, defendant argued that plaintiff's blanket allegation that the entire Manual is a rule is conclusory and not supported by any specific allegations or exhibits. Moreover, citing the Act's definition of "rule" (5 ILCS 100/1-70 (West 2020)) and section 5.02 of the Illinois Act on the Aging (20 ILCS 105/5.02 (West 2020) (providing that the Act does not apply to the Department with respect to the adoption of "any rule required by federal law in connection with which the Department is precluded by law from exercising any discretion")), defendant contended that the Manual was not subject to the Act's rulemaking provisions because it "simply provides a synthesized restatement of the requirements of statutes and regulations for the benefit of the Department and the AAAs." Similarly, with respect to count II, defendant argued that the Monitoring Policy does not fall within the Act's definition of a "rule" because it merely "summarizes the legal requirements of other statutes and regulations and directs the Department on how to carry out its obligations under those laws." See 5 ILCS 100/1-70 (West 2020).

¶ 16    Attached to defendant's motion to dismiss were various documents, including the entire Manual and a "verification" from Jose Jimenez, a supervisor with the Department. See 735 ILCS 5/1-109 (West 2020) (providing for "[v]erification by certification"). In the verification, Jimenez stated that the Department does not have a transparency policy. He explained that in 2018 the Department proposed the Transparency Policy at issue as an addition to the Manual. However, the

Transparency Policy "was never implemented or added to the *** Manual" and "is not an official policy of the Department." Jimenez further stated that the Department does not require AAAs to comply with the requirements of the Transparency Policy.

¶ 17      On July 28, 2020, the trial court held a hearing on defendant's motion to dismiss. Following the hearing, the court dismissed counts I and II without prejudice, based on the Act's limitations period. The court offered plaintiff the opportunity to replead any challenges to portions of the Manual published "within the statute of limitations" and directed plaintiff's counsel to "parse out" exactly which provisions of the Manual it was challenging in any amended complaint. With respect to count III, the court acknowledged that defendant "contest[ed] the facts," but it allowed that "on a 2-619 motion you can contest easily proven facts by way of affidavit." The court dismissed count III with prejudice because the Department showed that the Transparency Policy never took effect and plaintiff did not offer a "counter affidavit to suggest that [the Department is] requiring people to follow the Transparency Policy." On July 30, 2020, the trial court entered a written order in accordance with its oral pronouncements.

¶ 18                          D. Plaintiff's First Amended Complaint

¶ 19      Plaintiff subsequently filed a motion for leave to file an amended complaint, which the trial court granted. To that end, on August 12, 2020, plaintiff filed a six-count, first amended complaint. The amended complaint alleged that six different "rules" enacted by the Department were invalid "because they have not been adopted pursuant to the *** Act." Plaintiff therefore concluded that the policies were invalid. Counts I and II pertained to the entire Manual and the Monitoring Policy (section 1000 of the Manual), respectively. Count III pertained to an e-mail issued by the Department on August 5, 2020, in response to the COVID-19 pandemic (Tracking E-mail). The Tracking E-mail required AAAs to track and report certain information about senior centers, on a

spreadsheet provided by the Department, including (1) planning and service area, (2) county, (3) physical site name, (4) physical site address, (5) phone number, (6) operating hours, (7) date reopened after closures mandated by the response, (8) date reclosed due to COVID-19 (if applicable), and (9) subsequent reopening date (if applicable). Count IV related to a July 2020 memorandum from the Ombudsman, requiring each AAA to complete an "Organizational Conflict of Interest Form" on an annual basis (Conflict-of-Interest Form). Count V pertained to a July 2019 document titled "Mandatory Medicaid Application and Redetermination for Community Care Program Participants" (Medicaid Policy). The Medicaid Policy explained that participants in the Community Care Program were "no longer *** exempt from applying for Medicaid," so Care Coordination Units (CCUs) should verify whether a participant was receiving Medicaid benefits or had applied for them. The Medicaid Policy also described the procedures for determining a participant's eligibility. Finally, count VI pertained to a July 2020 memorandum from the Department's Office of Adult Protective Services regarding a "Report of Substantiation [(ROS)] Policy Clarification" (ROS Memorandum). The ROS Memorandum asked the State's Adult Protective Services provider agencies, in preparing final investigative reports of abuse, neglect, exploitation, or self-neglect, to confirm what "organization *** is providing care coordination services" to the alleged victim. The ROS Memorandum added that the ROS "should be sent to the organization coordinating care for the individual at the time of substantiation" and that "it is the responsibility of the [Adult Protective Services] provider to attempt to share the ROS with the care coordination agency that is actively involved with the individual." Plaintiff attached to its first amended complaint the Monitoring Policy, the Tracking E-mail (but not the spreadsheet), the Conflict-of-Interest Form and memorandum, the Medicaid Policy, and the ROS Memorandum.

Other than the Monitoring Policy, no other provisions of the Manual were appended to the first amended complaint.

¶ 20　On September 23, 2020, defendant filed a combined motion to dismiss plaintiff's first amended complaint, under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020)). Pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2020)), defendant argued, the entire complaint should be dismissed because the Act's contracts and agency-management exceptions apply. See 5 ILCS 100/5-35(c) (West 2020) (providing that "[t]he rulemaking procedures *** do not apply to a matter relating solely to agency management or personnel practices or to public property, loans, or contracts"). Defendant further argued that, pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2020)), counts I and II of the complaint should be partially dismissed as time-barred. See 5 ILCS 100/5-35(b) (West 2020) (providing that any "proceeding to contest any rule on the ground of noncompliance with the procedural requirements of this [Act] must be commenced within 2 years from the effective date of the rule"). Defendant next argued that counts V and VI should be dismissed pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)), based on a lack of standing. Specifically, defendant argued that neither the Medicaid Policy nor the ROS Memorandum applied to plaintiff. Defendant explained that the Medicaid Policy is directed at CCUs and it affects the CCUs and the Community Care Program participants. The ROS Memorandum is directed at Adult Protective Service provider agencies. Since neither policy is directed at AAAs, defendant maintained, plaintiff had no standing to challenge those policies.

¶ 21　Pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)), defendant argued that count I failed to state a claim for declaratory relief because it identified no specific provisions of the Manual that constituted rulemaking and the Department had the general authority to publish

a manual summarizing the laws it administers. As for counts II, III, IV, and VI, defendant argued that each of the forms, correspondence, and publications challenged were either prescriptions of standardized forms or descriptions of Department or AAA duties under federal or state law, not new rules that were required to undergo notice-and-comment rulemaking. See 5 ILCS 100/1-70 (West 2020) (excluding from the definition of a "rule" "statements concerning only the internal management of an agency and not affecting private rights or procedures available to persons or entities outside the agency," "informal advisory rulings," "intra-agency memoranda," and "the prescription of standardized forms"); 20 ILCS 105/5.02 (West 2020) ("Section 5-35 of the [Act] relating to procedures for rule-making does not apply to the adoption of any rule required by federal law in connection with which the Department is precluded by law from exercising any discretion"). Defendant attached various documents to her motion to dismiss, including a complete copy of the Manual.

¶ 22    In its response to defendant's motion to dismiss, plaintiff argued that it had standing to pursue counts V and VI because, *inter alia*, (1) the Act does not have an explicit standing requirement, (2)  plaintiff has "special legal status" as an advocate that authorizes it to "bring litigation on behalf of older adults for the Department's illegal conduct," and (3) it contracts with the Department to manage the programs at issue. With respect to defendant's statute of limitations defense, plaintiff argued that a rule that did not go through the Act's rulemaking procedure had no effective date and, thus, could be challenged at any time. Plaintiff also argued that there were questions of fact surrounding the effective dates of the Manual's various sections, attaching an affidavit from its executive director stating that he was "disputing the effective dates for policies contained in the Manual," because there was no evidence of when or how the Manual was published. In response to the section 2-615 motion, plaintiff argued that the Department's various

actions affected outside organizations and "any Department statement that affects outside organizations must be approved through" the Act's rulemaking provisions. As for the exception for rules required by federal law, plaintiff argued that the Department exercised discretion in publishing the Monitoring Policy, because that section did not recite the text of the federal monitoring requirements verbatim. Plaintiff attached a copy of the Tracking E-mail spreadsheet to its response.

¶ 23    While defendant's motion to dismiss the first amended complaint was pending, plaintiff filed a motion to add Kelly Richards, the Ombudsman, as a defendant to its action because she had sent an e-mail reminding plaintiff to complete the Conflict-of-Interest Form. Citing sections 2-405 and 2-406 of the Code (735 ILCS 5/2-405, 2-406 (West 2020)), plaintiff argued that the Ombudsman was a necessary party because she was "threatening sanctions" against plaintiff for not completing the Conflict-of-Interest Form. Plaintiff further asserted that defendant could not represent the Ombudsman because the Department's interests were adverse to hers. On October 14, 2020, the trial court held a hearing on plaintiff's motion and denied it.

¶ 24    In a memorandum opinion and order dated April 7, 2021 (but incorrectly file stamped April 8, 2020), the trial court granted defendant's motion to dismiss plaintiff's first amended complaint. The court agreed that plaintiff lacked standing to bring counts V and VI, because those counts challenged policies that applied only to CCUs and Adult Protective Service providers. The court rejected plaintiff's claim that it had standing because the Act does not have an explicit standing requirement, explaining that the fact that a statute does not expressly address standing does not mean that the standing doctrine is inapplicable. The court also rejected plaintiff's claim that it had standing via its status as an advocate for older adults, noting that the statutes and rules giving plaintiff such status say nothing about its standing to file lawsuits challenging rules that did not

apply to it. Finally, the court determined that the fact that plaintiff manages the programs at issue does not make it subject to the directives. The court explained that plaintiff is not the entity that must comply with the directives and plaintiff has not alleged any action that it must undertake to comply with the directives, nor has it alleged any harm that it would suffer if it did not abide by the directives. Therefore, the court dismissed counts V and VI with prejudice pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)).

¶ 25 As for counts I through IV, the court granted defendant's section 2-615 motion (see 735 ILCS 5/2-615 (West 2020)) and dismissed those counts with prejudice, concluding that none of the challenged actions of the Department required rulemaking. The court first noted that, in count I, plaintiff identified no specific provisions of the Manual that rose to the level of a rule under the Act. The court rejected plaintiff's claim that the "entire [M]anual" had to go through notice-and-comment rulemaking, because, rather than implementing new policies, it summarized existing laws. As for count II, the court held that the challenged portions of the Monitoring Policy simply summarized existing federal and state rules governing the Department's and plaintiff's monitoring responsibilities. With respect to count III, the court concluded that compliance with the Tracking E-mail constituted "a minor administrative task" that was "well within the scope of an AAA's duties" to monitor the programs in its service area. Finally, the court dismissed count IV, concluding that the Ombudsman's request that plaintiff complete the Conflict-of-Interest Form was not a rule, because federal and state law required the Ombudsman to identify and remedy conflicts of interest.

¶ 26 Plaintiff subsequently filed a notice of appeal (which it later amended) from (1) the trial court's April 7, 2021, memorandum opinion and order, which dismissed with prejudice counts I through VI of its first amended complaint, (2) the trial court's July 30, 2020, order dismissing with

prejudice count III of plaintiff 's original complaint, and (3) the "[o]rders taken from the Report of Proceedings before the [trial court] on July 28, 2020."

¶ 27                                  II. ANALYSIS

¶ 28    On appeal, plaintiff argues that the trial court improperly dismissed with prejudice count III of its original complaint as well as all six counts in its first amended complaint. In general, plaintiff asserts that the trial court "improperly construed facts against [it] and made mistakes of law." Prior to discussing these contentions, we address the appropriate standard of review.

¶ 29                              A. Standard of Review

¶ 30    Defendant moved to dismiss plaintiff's complaints pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020)). Section 2-619.1 provides that motions with respect to pleadings pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2020)) may be filed together as a single motion. 735 ILCS 5/2-619.1 (West 2020); *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003).

¶ 31    A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. 735 ILCS 5/2-615 (West 2020); *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006); *Collins v. Bartlett Park District*, 2013 IL App (2d) 130006, ¶ 26. In ruling on a section 2-615 motion to dismiss, all well-pleaded facts and all reasonable inferences that may be drawn from those facts are accepted as true. *Rockford Memorial Hospital v. Havrilesko*, 368 Ill. App. 3d 115, 120 (2006). However, a plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). The critical inquiry is whether the allegations of the complaint are sufficient to establish a cause of action under which relief may be granted. *Malinksi v. Grayslake Community High School District 127*, 2014 IL App (2d) 130685, ¶ 6. Thus, only those facts apparent from the

face of the pleadings, documents attached to a complaint (including exhibits, depositions, and affidavits), matters of which the court can take judicial notice, and judicial admissions in the record may be considered in ruling on a section 2-615 motion. *Bruss v. Przybylo*, 385 Ill. App. 3d 399, 405 (2008); *Brock v. Anderson Road Ass'n*, 287 Ill. App. 3d 16, 21 (1997). A court may also consider documents attached to a motion to dismiss where the plaintiff put their contents at issue but failed to attach them to the complaint. See *Perkaus v. Chicago Catholic High School Athletic League*, 140 Ill. App. 3d 127, 134 (1986). Where allegations made in the body of the complaint conflict with facts disclosed in the exhibits, the exhibits control and the allegations will not be taken as true in evaluating the sufficiency of the complaint. *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 430-31 (2004).

¶ 32    In contrast, a motion to dismiss based on section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)) admits the legal sufficiency of the complaint but raises defects, defenses, or other affirmative matter, appearing on the face of the complaint or established by external submissions, that defeat the claim. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 6-7 (2007); *Jaros v. Village of Downers Grove*, 2020 IL App (2d) 180654, ¶ 35; *Malinksi*, 2014 IL App (2d) 130685, ¶ 6. An "affirmative matter" for the purposes of a section 2-619 motion is something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 29 (2003). The purpose of section 2-619 is to afford litigants a means to dispose of issues of law and easily proven issues of fact at the outset of litigation. *Brummel v. Grossman*, 2018 IL App (1st) 162540, ¶ 22.

¶ 33    In considering a combined motion to dismiss pursuant to section 2-619.1, we accept all well-pleaded facts in the complaint as true, drawing all reasonable inferences from these facts in

favor of the nonmoving party. *Marshall*, 222 Ill. 2d at 429; *Malinksi*, 2014 IL App (2d) 130685,

¶ 6. Our review under either section 2-615 or section 2-619 of the Code is *de novo*. *Hadley v. Doe*,

2015 IL 118000, ¶ 29; *Malinksi*, 2014 IL App (2d) 130685, ¶ 6. Further, we may affirm the trial

court's judgment on any basis in the record, regardless of the court's reasoning. *O'Callaghan v.*

*Satherlie*, 2015 IL App (1st) 142152, ¶ 17.

¶ 34                                    B. The Original Complaint

¶ 35    We first address plaintiff's challenge to the dismissal of count III of plaintiff's original

complaint. That count alleged that the Transparency Policy is an invalid administrative rule under

the Act. As noted earlier, the trial court dismissed count III with prejudice, concluding that the

Department showed that the Transparency Policy never took effect and noting that plaintiff did

not offer a "counter affidavit to suggest that [the Department is] requiring people to follow the

Transparency Policy." Plaintiff argues that the dismissal of this count should be vacated because

the trial court improperly construed facts against it. See *Marshall*, 222 Ill. 2d at 429 (noting that,

in reviewing the sufficiency of a complaint, the court "accept[s] as true all well-pleaded facts and

all reasonable inferences that may be drawn from those facts" and "construe[s] the allegations in

the complaint in the light most favorable to the plaintiff"). In addition, plaintiff argues that the trial

court committed an error of law by relying on Jimenez's verification "to dispute facts." Plaintiff

has forfeited review of this issue.

¶ 36    In *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153 (1983),

the supreme court set forth the circumstances under which a party who files an amended complaint

forfeits any objection to the trial court's ruling on any former complaints, or certain counts therein.

The court explained that, " '[w]here an amendment is complete in itself and does not refer to or

adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes,

being in effect abandoned and withdrawn.' " *Foxcroft Townhome Owners Ass'n*, 96 Ill. 2d at 154 (quoting *Bowman v. County of Lake*, 29 Ill. 2d 268, 272 (1963)). There are several methods by which a plaintiff may avoid the consequences of the *Foxcroft* rule. *Childs v. Pinnacle Health Care, LLC*, 399 Ill. App. 3d 167, 176 (2010). First, the plaintiff may stand on the dismissed pleading and file an appeal. *Du Page Aviation Corp., Flight Services, Inc. v. Du Page Airport Authority*, 229 Ill. App. 3d 793, 800 (1992). Second, the plaintiff may file an amended complaint realleging, incorporating by reference, or referring to the claims set forth in the prior complaint. *Doe v. Roe*, 289 Ill. App. 3d 116, 119 (1997). Third, the plaintiff may perfect an appeal from an order dismissing fewer than all of the counts of his or her complaint prior to filing an amended pleading that neither refers to nor adopts the dismissed counts. *Brown Leasing, Inc. v. Stone*, 284 Ill. App. 3d 1035, 1043-44 (1996).

¶ 37    In this case, plaintiff did not pursue any of these three exceptions to the *Foxcroft* rule. It did not stand on the dismissed pleading and file an appeal. Instead, it requested permission to file an amended complaint. Further, plaintiff's amended complaint did not refer to or adopt count III of the prior pleading. See *Tabora v. Gottlieb Memorial Hospital*, 279 Ill. App. 3d 108, 114 (1996) (noting that "[a] simple paragraph or footnote in the amended pleadings notifying defendants and the court that plaintiff was preserving the dismissed portions of his former complaints for appeal" is sufficient to protect against forfeiture under *Foxcroft*). Additionally, plaintiff did not appeal from the dismissal of count III prior to filing an amended pleading that neither refers to nor adopts the dismissed counts. Rather, it appealed the order dismissing count III of its initial complaint *after* the trial court ruled on the amended complaint. Given these circumstances, plaintiff has forfeited its challenge to the dismissal of count III of the original complaint. See *Cwikla*, 345 Ill. App. 3d at 27-28 (holding, *sua sponte*, that, pursuant to the *Foxcroft* rule, the plaintiffs forfeited their claim

where they failed to reallege it in an amended pleading); see also *Bonhomme v. St. James*, 2012 IL 112393, ¶¶ 16-31 (holding that the plaintiff abandoned claims that were dismissed with prejudice and were not "referenced or incorporated" in subsequent amended complaint).[1]

¶ 38   Forfeiture notwithstanding, we would affirm the dismissal of count III of the original complaint. Defendant moved to dismiss count III of the original complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2020)). That provision provides for involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2020). Although section 2-619 is not the proper method to contest the truth of a factual allegation (*Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 51), it does allow the movant to seek dismissal based on easily proven issues of fact (*United City of Yorkville v. Fidelity & Deposit Co. of Maryland*, 2019 IL App (2d) 180230, ¶ 126; *Reynolds*, 2013 IL App (4th) 120139, ¶ 30). However, those facts must relate to the affirmative matter that is the asserted basis for the dismissal. *United City of Yorkville*, 2019 IL App (2d) 180230, ¶ 126; *Reynolds*, 2013 IL App (4th) 120139, ¶ 30.

¶ 39   "The phrase 'affirmative matter' encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993); see also *Cwikla*, 345 Ill. App. 3d at 29 (noting that "affirmative matter" for the purposes of a section 2-619 motion is something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or

---

[1]At oral argument, plaintiff's counsel conceded that plaintiff did not refer to, adopt, or incorporate count III of the original complaint in its amended pleading.

conclusions of material fact contained in or inferred from the complaint). If the "affirmative matter" asserted is not apparent on the face of the complaint, the motion to dismiss must be supported by affidavit. *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. By presenting an adequate affidavit in support of the asserted defense, the defendant satisfies the initial burden of going forward on the section 2-619 motion. *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. The burden then shifts to the plaintiff to establish that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven. *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. The plaintiff may meet this burden by affidavit or other proof. *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. "A counteraffidavit is necessary *** to refute evidentiary facts properly asserted by affidavit supporting the motion else the facts are deemed admitted." *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. If, after considering the pleadings and affidavits, the trial court determines that the plaintiff has failed to carry the shifted burden of going forward, the motion to dismiss may be granted. *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116.

¶ 40    Applying these principles to the case at bar, even if the promulgation of the Transparency Policy did not comply with the rulemaking provisions of the Act, whether it became part of the Manual and was an official policy or rule of the Department is an easily proved issue of fact that would defeat plaintiff's claim against defendant. Plaintiff did not append a copy of the entire Manual to its complaint. Thus, whether the Transparency Policy is part of the Manual is not apparent on the face of the complaint. Accordingly, defendant attached to her motion to dismiss a copy of the entire Manual as well as a "verification" from Jimenez, the Department's Older Americans Act services supervisor (see 735 ILCS 5/1-109 (West 2020) (providing for "[v]erification by certification"). See *In re Estate of Mosquera*, 2013 IL App (1st) 120130, ¶ 24

(holding that a verification under section 1-109 of the Code is an acceptable substitute for an affidavit for purposes of a motion to dismiss under section 2-619). In the verification, Jimenez stated that the Department does not have a transparency policy. He explained that in 2018 the Department proposed the Transparency Policy at issue as an addition to the Manual. However, the Transparency Policy "was never implemented or added to the *** Manual" and "is not an official policy of the Department." Jimenez further stated that the Department does not require AAAs to comply with the requirements in the Transparency Policy. A review of the entire Manual submitted by defendant shows that the Transparency Policy is not included therein. By presenting adequate evidence that the Transparency Policy was never implemented or made part of the Manual, defendant satisfied the initial burden of going forward on the motion to dismiss. See *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. The burden then shifted to plaintiff. *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. A counteraffidavit was necessary to refute the evidentiary facts established by defendant in support of her motion. However, plaintiff did not produce a counteraffidavit or any other evidence. See *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. Therefore, the evidentiary facts in the motion to dismiss were deemed admitted. See *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. Since the Transparency Policy was never implemented, added to the Manual, or made an official policy, whether the Department followed the Act's rulemaking provisions in developing the policy is beside the point. Accordingly, the trial court correctly found that plaintiff failed to carry the shifted burden of going forward on this issue and dismissal of count III of the original complaint pursuant to section 2-619(a)(9) of the Code was proper.

¶ 41                           C. First Amended Complaint

¶ 42    Plaintiff also challenges the trial court's dismissal of all six counts of its first amended complaint. We address each count in turn. Prior to doing so, however, we note that plaintiff challenges the trial court's dismissal of several of the counts on the ground that the trial court improperly construed facts against it. See *Marshall*, 222 Ill. 2d at 429 (noting that, in reviewing the sufficiency of a complaint, the court "accept[s] as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts" and "construe[s] the allegations in the complaint in the light most favorable to the plaintiff"). We do not address these claims, since we conduct our own review of plaintiff's allegations *de novo*. See *Hadley*, 2015 IL 118000, ¶ 29; *Malinksi*, 2014 IL App (2d) 130685, ¶ 6; see also *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 17 (noting that a reviewing court conducting *de novo* review may affirm the court's judgment on any basis in the record, regardless of the trial court's reasoning).

¶ 43                                1. Count I—The Manual

¶ 44    Plaintiff argues that the dismissal of count I of its first amended complaint should be vacated because the trial court committed two errors of law in dismissing that count. First, plaintiff contends that the trial court erred in dismissing count I, because it failed to find any pleading defects. Second, it contends that the case law cited by the court in support of its decision was inapplicable. Defendant responds that the court properly dismissed count I because, outside of the Monitoring Policy, plaintiff failed to identify any specific provision of the Manual that constitutes a rule. Alternatively, defendant argues that plaintiff's claims regarding the Manual are untimely.

¶ 45    We conclude that count I was properly dismissed for two reasons. First, with the exception of its claim regarding the Monitoring Policy, plaintiff failed to timely raise its claims regarding the Manual. Second, contrary to plaintiff's contention, there *is* a pleading defect in count I of plaintiff's first amended complaint.

¶ 46    Section 5-35(b) of the Act provides that "[a] proceeding to contest any rule on the ground of non-compliance with the procedural requirements of [the Act's rulemaking provisions] must be commenced within 2 years from the effective date of the rule." 5 ILCS 100/5-35(b) (West 2020). The Manual consists of 12 sections, labeled from 100 to 1200. The Manual was published in 1983, with revisions made thereafter. Each section indicates when that particular section was published or revised. Sections 100, 300, 400, 800, and 1200 were published in 1983. Sections 200, 500, and 700 were revised in 1998. Section 1100 was revised in 2012. Section 900 was revised in 2013. Section 600 was revised on January 1, 2018. Section 1000 was revised on August 1, 2018. Plaintiff initiated this action on January 16, 2020, when it filed its original complaint. Thus, other than section 1000, every section of the Manual was published before January 16, 2018. Accordingly, with the exception of section 1000 (which is discussed in relation to count II below), count I is untimely under the Act and was subject to dismissal on this basis. 5 ILCS 100/5-35(b) (West 2020); *Filliung*, 387 Ill. App. 3d at 53; 735 ILCS 5/2-619(a)(5) (West 2020). Although the trial court did not dismiss count I of the first amended complaint on this basis, it was raised and briefed in the trial court, and this court may affirm the trial court's ruling on any basis in the record. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 17; see also *Rivera v. Allstate Insurance Co.*, 2021 IL App (1st) 200735, ¶ 25 (noting that appellate court may affirm a dismissal on any basis apparent in the record, regardless of the circuit court's reasoning or the section of the Code upon which the court relied).

¶ 47    In the trial court, plaintiff attempted to create a question of fact regarding the Manual's effective dates through an affidavit from its executive director, which was attached to plaintiff's response to defendant's motion to dismiss the first amended complaint. In the affidavit, the executive director stated that he was "disputing the effective dates for policies contained in the

Manual," because defendant did not establish how the effective dates were determined or how the effective dates can be changed. However, speculating that the Manual's sections may have had different effective dates cannot create a genuine issue of material fact to defeat a section 2-619 motion. See *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 20 (providing that unsupported conclusions, opinions, or speculation are insufficient to raise a genuine issue of material fact); *Rojo v. Tunick*, 2021 IL App (2d) 200191, ¶ 47 (noting that, in reviewing a dismissal under section 2-619, the relevant inquiry is whether the existence of a genuine issue of material fact should have precluded the dismissal). Without any evidence that the Manual's sections had different effective dates, plaintiff cannot show that its claim was timely.

¶ 48    Plaintiff also argued in the trial court that the Act's limitations period applies only to rules that have been "approved" under the Act's notice-and-comment rulemaking procedure. However, the Act expressly states that the limitations period applies to challenges "on the ground of non-compliance with the procedural requirements" of the Act's rulemaking provisions. 5 ILCS 100/5-35(b) (West 2020). In the first amended complaint, plaintiff challenged the policies at issue, arguing that they were rules that were required to be adopted through the Act's rulemaking procedures but that they were not so adopted. Plaintiff therefore concluded that the policies were invalid "because they have not been adopted pursuant to the *** Act." Plaintiff therefore placed the limitations period at issue by asserting that the Manual was not adopted in accordance with the Act's rulemaking provisions.

¶ 49    Secondly, even if plaintiff had timely challenged the Manual, there is, contrary to plaintiff's contention, a pleading defect in count I of plaintiff's first amended complaint. Count I alleges that the entire Manual is invalid, but, as defendant notes, aside from the Monitoring Policy, plaintiff cites no specific provision of the Manual that constitutes a rule under the Act. Defendant's first

amended complaint consisted of the following components: (1) an introductory paragraph, (2) a section entitled "Nature" that stated that defendant "is using invalid rules to regulate the conduct of [plaintiff] and [plaintiff's] grantees" and alleged that "[t]he rules are invalid because they have not been adopted pursuant to the *** Act," (3) a section listing the parties (paragraphs 1-5); (4) a brief overview of the Act (paragraphs 6-9), (5) a section entitled "Department Rules" that briefly discussed the six "rules" being challenged (paragraphs 10-28), (6) the six counts of the complaint (paragraphs 29-52), and (7) a prayer for relief.

¶ 50 With respect to the Manual, the "Department Rules" section of the complaint provided as follows:

"10. The Department has issued the *Area Agencies Policies and Procedures Manual* (Manual).

11. The Manual states that it 'is the official document' for regulating the conduct of [plaintiff] and [plaintiff's] grantees.

12. [Plaintiff] risks losing funding by not complying with the Manual."

Count I alleged as follows:

"29. Paragraphs 1-28 above are incorporated into Count I.

30. The Manual is a rule which must be adopted through the Rule Process.

31. The Manual has not been adopted through the Rule Process.

32. The Manual is an invalid rule under the *** Act."

In its prayer for relief, plaintiff requested that the trial court enter an order "stating" that the Manual is invalid.

¶ 51 As the foregoing illustrates, while plaintiff makes conclusory allegations that the Manual is a rule that must be adopted through the Act's rulemaking procedures, nowhere in count I of the

first amended complaint does plaintiff identify the provisions of the Manual it is challenging or set forth facts supporting why the various sections of the Manual constitute a rule. This was fatal to count I of plaintiff's complaint. See *Pooh-Bah Enterprises, Inc.*, 232 Ill. 2d at 473 (noting that a plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations); *Pilotto v. Urban Outfitters West, L.L.C.*, 2017 IL App (1st) 160844, ¶ 8 (observing that Illinois is a fact-pleading state; therefore, conclusions of law and conclusory allegations unsupported by specific facts are not sufficient to survive dismissal). Accordingly, for the foregoing reasons, count I of plaintiff's first amended complaint was properly dismissed.

¶ 52                           2. Count II—The Monitoring Policy

¶ 53     Next, plaintiff argues that the dismissal of count II of its first amended complaint should be vacated because the trial court improperly determined that the Monitoring Policy was exempt from the Act's rulemaking provisions under section 5.02 of the Illinois Act on the Aging (20 ILCS 105/5.02 (West 2020) (providing that the Act's rulemaking procedures "do[ ] not apply to the adoption of any rule required by federal law in connection with which the Department is precluded by law from exercising any discretion")). According to plaintiff, this exception does not apply because the Department exercised discretion in publishing the Monitoring Policy. In this regard, plaintiff reasons that the Monitoring Policy does not recite the text of the federal monitoring requirements verbatim and the Department made "significant changes" to the federal monitoring requirements in issuing the Monitoring Policy.

¶ 54     Defendant's response is threefold. First, defendant argues that, rather than setting forth substantive rights or duties, the Monitoring Policy "merely describes existing federal and state laws requiring that the Department and [plaintiff] monitor their respective subrecipients." Second, defendant responds that, even if some provisions in the Monitoring Policy constitute "rules,"

section 5.02 of the Illinois Act on the Aging (20 ILCS 105/5.02 (West 2020)) exempted them from notice-and-comment rulemaking because they are required by federal law. Finally, defendant contends that plaintiff's claim regarding the Monitoring Policy is untimely under section 5-35(b) of the Act (5 ILCS 100/5-35(b) (West 2020) (providing that "[a] proceeding to contest any rule on the ground of non-compliance with the [Act's rulemaking provisions] must be commenced within 2 years from the effective date of the rule")).

¶ 55     Initially, we address defendant's argument that plaintiff's claim regarding the Monitoring Policy is untimely. As noted above, the Monitoring Policy comprises section 1000 of the Manual. Defendant acknowledges that the Monitoring Policy was published on August 1, 2018, which is less than two years prior to plaintiff's initiation of this lawsuit. She claims, however, that the specific provisions of the Monitoring Policy challenged in count II of the first amended complaint have been in the Manual since 2007. In this regard, she asserts that, although the Monitoring Policy was changed in August 2018, the primary change at that time was the addition of subsection 1002, which plaintiff does not challenge in its first amended complaint. Since plaintiff's challenge to the Monitoring Policy involves provisions enacted more than two years prior to the date of the initiation of this litigation, defendant maintains, count II of the first amended complaint should be dismissed as untimely. See 5 ILCS 100/5-35(b) (West 2020). We reject defendant's timeliness claim with respect to count II for two principal reasons. First, a review of count II shows that plaintiff challenges various portions of the Monitoring Policy, including subsection 1002 of the Manual. Moreover, even if the primary change to the Monitoring Policy in August 2018 involved the addition of section 1002, our review of the 2007 and 2018 versions of the Monitoring Policy show that other provisions were also altered at the time, including subsections 1001, 1003, 1004, 1005, and 1007.

¶ 56    Despite our disagreement with defendant on the timeliness issue, we reject plaintiff's claim that the trial court erred in dismissing count II of the first amended complaint. Not every action taken by an administrative agency constitutes a rule. *Freedom Oil Co. v. Pollution Control Board*, 275 Ill. App. 3d 508, 517 (1995). Nor must "rules be adopted to cover every conceivable issue." *Freedom Oil Co.*, 275 Ill. App. 3d at 517. As noted, the Act defines a "rule" as an "agency statement of general applicability that implements, applies, interprets, or prescribes law or policy." 5 ILCS 100/1-70 (West 2020). However, the term does not include "statements concerning only the internal management of an agency and not affecting private rights or procedures available to persons or entities outside the agency," "informal advisory rulings," "intra-agency memoranda," or "the prescription of standardized forms." 5 ILCS 100/1-70 (West 2020). Additionally, the Act's rulemaking provisions do not apply to (1) "a matter relating solely to agency management or personnel practices or to public property, loans, or contracts" (5 ILCS 100/5-35(c) (West 2020)) or (2) "the adoption of any rule required by federal law in connection with which the Department is precluded by law from exercising any discretion" (20 ILCS 105/5.02 (West 2020)).

¶ 57    Older Americans Act grants are subject to the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (Uniform Guidance), which is codified at Part 200 of Title 2 of the Code of Federal Regulations (2 C.F.R. § 200.0 *et seq.* (2020)), a set of procedural rules that apply to federal agencies that make federal awards to "non-Federal entities." 2 C.F.R. § 200.101(a) (2020). Additionally, HHS has its own regulations mirroring those of the Uniform Guidance that apply to Older Americans Act grants. 45 C.F.R. §§ 75.101(a), (b), 1321.5(b) (2020). A court may take judicial notice of administrative rules and regulations. See *In re Marriage of Wehr*, 2021 IL App (2d) 200726, ¶ 30.

¶ 58    For purposes of the Uniform Guidance, both the Department and AAAs are considered "non-Federal entities." See 2 C.F.R. § 200.69 (2020) (defining "Non-Federal entity" in relevant part as "a state, local government, *** or nonprofit organization that carries out a Federal award as a recipient or subrecipient"); 45 C.F.R. § 75.2 (2020) (same). The Department, as the entity that receives funds "directly from" the federal government, is also a "recipient," whereas AAAs are "subrecipients" because they receive funds from the Department. See 2 C.F.R. §§ 200.86, 200.93 (2020) (defining "recipient" and "subrecipient"); 45 C.F.R. § 75.2 (2020) (same). Both the Department and AAAs are also classified as "pass-through entities" because they pass the federal funds that they receive on to "a subrecipient to carry out part of a Federal program." See 2 C.F.R. § 200.74 (2020) (defining "pass-through entity"); 45 C.F.R. § 75.2 (2020) (same).

¶ 59    As pass-through entities, both the Department and AAAs must "[m]onitor the activities" of their respective subrecipients "as necessary to ensure that the subaward is used for authorized purposes, in compliance with Federal statutes, regulations, and the terms and conditions of the subaward; and that subaward performance goals are achieved." 2 C.F.R. § 200.331(d) (2020); 45 C.F.R. § 75.352(d) (2020). As part of this monitoring, a pass-through entity must perform "audits" and "on-site reviews" of its subrecipient's programs and provide the subrecipient with a written determination of its findings and proposed corrective actions. 2 C.F.R. § 200.331(d)(2)-(3) (2020); 45 C.F.R. §§ 75.2, 75.352(d)(2)-(3) (2020). Further, pass-through entities must follow-up to "ensur[e] that the subrecipient takes timely and appropriate action" to correct any deficiencies. 2 C.F.R. § 200.331(d)(2) (2020); 45 C.F.R. § 75.352(d)(2) (2020).

¶ 60    At least annually, each nonfederal entity receiving Older Americans Act funds—service providers, AAAs, and the Department—must submit "performance reports" to the entity from which it received federal funds, i.e., service providers report to AAAs and AAAs report to the

Department. 45 C.F.R. § 75.342(b)(1) (2020). The Department, in turn, must submit its own performance report to HHS. 45 C.F.R. § 75.342(b) (2020). Moreover, AAAs must retain for three years "[f]inancial records, supporting documents, statistical records, and all other *** records pertinent to" its Older American Act awards. 2 C.F.R. § 200.333 (2020); 45 C.F.R. § 75.361 (2020). With this information in mind, we turn to the allegations in count II of plaintiff's first amended complaint.

¶ 61    Plaintiff challenged seven provisions of the Monitoring Policy as constituting improper rulemaking by the Department. First, plaintiff alleged that the Department engaged in rulemaking by providing in section 1007(A)(1) of the Manual that AAAs "will develop and use systematic procedures and an instrument for conducting subgrantee and subcontractor evaluations." As detailed above, however, an AAA already has a responsibility to monitor and evaluate its subgrantees and subcontractors. See, *e.g.*, 2 C.F.R. § 200.331(d) (2020); 45 C.F.R. § 75.352(d) (2020). Thus, as the trial court determined, requiring that the evaluations be done in a "systematic" way is axiomatic and does not constitute rulemaking.

¶ 62    Second, plaintiff challenged section 1007(A)(2)(a) of the Manual, which requires that the AAA evaluation instrument for subgrantees or subcontractors provide "a comprehensive on-site evaluation of sub grantees and/or subcontractors at least once during the [AAA's] area plan cycle" and "conduct additional evaluations of subgrantees/subcontractors based on the risk assessment and monitoring process." As noted above, however, federal regulations envision that pass-through entities conduct "on-site" reviews of subrecipients to detect deficiencies pertaining to any federal grant. 2 C.F.R. § 200.331(d)(2) (2020); 45 C.F.R. § 75.352(d)(2) (2020). Further, the requirement that AAAs conduct reviews at least once during the area plan cycle is implicit in the requirement of the federal regulations that the activities of subrecipients be monitored. 2 C.F.R. § 200.331(d)

(2020); 45 C.F.R. § 75.352(d) (2020). Because area plans are in effect for only three years (89 Ill. Adm. Code 230.130(a) (2002)), monitoring a subgrantee's or subcontractor's performance under an area plan must be performed at least once during the three-year cycle the area plan is in effect. Otherwise, an entire cycle could pass without any evaluation into a service provider's compliance with an area plan. Furthermore, the direction to conduct additional evaluations based on the results of any evaluation restates federal rules requiring that monitoring be performed "as necessary." 2 C.F.R. § 200.331(d) (2020); 45 C.F.R. § 75.352(d) (2020).

¶ 63    Third, plaintiff challenged section 1007(A)(2)(c) of the Manual, which requires the "submission of a written report on the [AAA's] findings to the subgrantees and/or subcontractors within a reasonable time period." However, federal rules already require AAAs to issue to service providers a written report of their findings. 2 C.F.R. § 200.331(d)(3) (2020) (requiring pass-through entities to provide subrecipients with a written determination of findings); 45 C.F.R. §§ 75.2, 75.352(d) (2020) (same).

¶ 64    Fourth, plaintiff challenged section 1007(C) of the Manual, which requires AAAs to "maintain documentation of all review, monitoring and related follow-up activities." This provision, however, merely restates an AAA's recordkeeping duties under federal rules. See 2 C.F.R. § 200.333 (2020); 45 C.F.R. § 75.361 (2020).

¶ 65    Fifth, plaintiff challenged section 1004(C)(1)(c) of the Manual. That section provided that, when the Department recommends corrective action as a result of its evaluation of an AAA, "if needed, the [AAA] will develop and implement a work plan to ensure that [it] carries out recommended corrective action in a timely manner." But the federal regulations require follow-up to ensure that a subrecipient "takes timely and appropriate action on all deficiencies pertaining to the Federal award." 2 C.F.R. § 200.331(d)(2) (2020); 45 C.F.R. § 75.352(d)(2) (2020).

¶ 66     Plaintiff also challenged section 1003(B)(1) of the Manual, which provides that evaluations will be "performed on-site a minimum of once during the Area Plan cycle which has been by [*sic*] Department *** policy to be a three-year time period to determine the extent of the agency's adherence with conditions of awards documents, prevailing statutory and regulatory laws, rules, policies and significant procedures" and allows that the Department "may conduct additional evaluations of an [AAA] based on the risk assessment and monitoring process outlined in Section 1002 and Section 1005." As noted above, however, the requirement that AAAs conduct reviews at least once during the area plan cycle is implicit in the federal regulations' requirement that the activities of subrecipients be monitored. 2 C.F.R. § 200.331(d) (2020); 45 C.F.R. § 75.352(d) (2020). Furthermore, the direction to conduct additional evaluations based on the results of any evaluation restates federal rules requiring that monitoring be performed "as necessary." 2 C.F.R. § 200.331(d) (2020); 45 C.F.R. § 75.352(d) (2020); see also 89 Ill. Adm. Code 230.370 (2002) (providing that "[p]rogram and financial reviews shall be conducted for the purpose of evaluating [AAA] compliance with *** the approved area plan").

¶ 67     Finally, plaintiff contests sections 1002 through 1006 of the Manual, which require AAAs to "comply with Department risk assessments, evaluations, on-site evaluations, monitoring, and special reviews of [AAAs]." Again, the federal and state regulations referenced above mandate that AAAs comply with such monitoring and evaluations. The Manual therefore adds no requirement to comply with mandates not already expressed in existing laws.

¶ 68     Plaintiff contends that the Manual makes "significant changes" to existing federal and state laws. However, plaintiff does not indicate what those changes are or explain how the Manual's language alters any existing federal and state monitoring rules. Plaintiff has therefore forfeited its conclusory argument that the Manual made "significant changes" to existing law. Ill. S. Ct. R.

341(h)(7) (eff. Oct. 1, 2020) (providing that the appellant's brief must contain the "contentions of the appellant and the reasons therefor"); *Gandy v. Kimbrough*, 406 Ill. App. 3d 867, 876 (2010) (holding that argument lacking analysis of relevant authority or a cohesive legal argument regarding their application is forfeited).

¶ 69    For the foregoing reasons, we affirm the dismissal of count II of plaintiff's first amended complaint.

¶ 70                        3. Count III—The Tracking E-mail

¶ 71    Next, plaintiff argues that the dismissal of count III of its first amended complaint should be vacated because the trial court improperly determined that the Tracking E-mail was not a rule. Plaintiff argues that, in so concluding, the trial court committed three errors of law. First, the court failed to find any pleading defects in count III. Second, the court improperly read an exception into the Act for "minor administrative tasks." Third, the court improperly relied on federal case law. Defendant responds that the trial court properly dismissed count III. Defendant posits that the Tracking E-mail was not subject to the Act's rulemaking provisions because its implementation was merely the "prescription of a standardized form" that did not impose on AAAs any new duties that did not already exist in federal or state law.

¶ 72    In count III of its first amended complaint, plaintiff alleged that the Tracking E-mail constituted a rule that must be adopted through the Act's rulemaking provisions because the Department "exercised discretion" by including policies not required by federal law. Specifically, plaintiff cited a requirement in the Tracking E-mail that AAAs track and report, via a provided spreadsheet, information such as the operating hours of senior centers, the date of reopening, the date of reclosure due to COVID-19 (if applicable), and the date of the subsequent reopening. Plaintiff suggested that, by imposing these duties, the Department "exercised discretion," thereby

taking the Tracking E-mail outside of the exception providing that "the adoption of any rule required by federal law in connection with which the Department is precluded by law from exercising any discretion." See 20 ILCS 105/5.02 (West 2020).

¶ 73    We conclude that the trial court properly dismissed count III of the first amended complaint. The Tracking E-mail was not subject to the Act's rulemaking provisions for two reasons. First, by asking AAAs to keep track of senior centers that had reopened during the COVID-19 pandemic, the Department was complying with federal regulations that require it to ensure that senior centers "compl[y] with all applicable State and local health *** laws, ordinances or codes." 45 C.F.R. § 1321.75(a) (2020); see also 89 Ill. Adm. Code 230.250(a)(3)(A) (1991) (stating that a recipient of any award for multipurpose senior center activities "shall comply with all applicable State and local health *** laws, ordinances or codes"). The Tracking E-mail was initiated during Phase 4 of the Governor's reopening plan as part of the pandemic response, which required masks to be worn in indoor public places and limited indoor gatherings to 50 people. See Exec. Order No. 2020-43, 44 Ill. Reg. 11,704 (June 26, 2020), https://www2.illinois.gov/Documents/ ExecOrders/2020/ExecutiveOrder-2020-43.pdf[https://perma.cc/ L3NY -VCK5].[2] To ensure that senior centers were complying with those requirements, as well as any local public health requirements, the Department had to know which senior centers were open. Indeed, as the Tracking E-mail indicates, this procedure would ensure that "guidelines for resuming in-person services at senior

---

[2]    Executive Order 2020-43 is available at www2.illinois.gov/Documents/ ExecOrders/2020/ExecutiveOrder-2020-43.pdf (last visited April 15, 2022). Courts may take judicial notice of such documents. See *Kopnick v. JL Woode Management Co.*, 2017 IL App (1st) 152054, ¶ 26 (noting that court may take judicial notice of information on municipality's public website).

centers" were followed and that the "the health, safety, and welfare of \*\*\* seniors" were being protected. Therefore, the Department appropriately requested that AAAs assist in collecting this information.

¶ 74    Second, the Tracking E-mail does not constitute a "rule" under the Act because its implementation involved the "prescription of standardized forms." The spreadsheet was standardized, as it was sent to all AAAs in the same format and sought the same information. See Webster's Third New International Dictionary 2223 (2002) (defining "standardize" as to "make uniform"). Requiring AAAs to complete the spreadsheet was merely a "prescription" that that form be used. See Webster's Third New International Dictionary 1792 (2002) (defining "prescription" in relevant part as "the process of laying down authoritative rules or directions").

¶ 75    Plaintiff's brief fails to explain why the Tracking E-mail constitutes a rule. Instead, it takes issue with the trial court's analysis of the Act, the Department's rules, and case law. But, as discussed above, the trial court's reasoning is beside the point where, as here, we apply *de novo* review. See *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 17.

¶ 76    For the foregoing reasons, we therefore affirm the trial court's dismissal of count III of plaintiff's first amended complaint.

¶ 77                    4. Count IV—The Conflict-of-Interest Form

¶ 78    Next, plaintiff argues that the dismissal of count IV of its first amended complaint should be vacated because the trial court improperly determined that the Conflict-of-Interest Form was not a rule subject to the Act's rulemaking procedure. In support of this claim, plaintiff argues that the trial court made several legal errors, including failing to grant its motion to add the Ombudsman as a necessary party and misreading "the exception" to the Act's rulemaking provisions in section 5.02 of the Illinois Act on the Aging. Defendant responds that the Conflict-of-Interest Form was

not subject to the Act's rulemaking provisions because its implementation was merely the "prescription of a standardized form" that did not impose on AAAs any duties that did not already exist in federal or state law. Further, defendant urges this court to uphold the trial court's denial of plaintiff's request to add the Ombudsman as a party, for two reasons. First, defendant argues that the record on appeal is inadequate to address the issue. Second, defendant argues that adding the Ombudsman would have been "futile."

¶ 79    We first address whether the trial court erred in denying plaintiff's motion to add the Ombudsman as a necessary party. We agree with defendant that plaintiff has failed to provide an adequate record to address this issue. In this regard, we note that, as the appellant, it was plaintiff's burden to provide this court with a complete record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). Any doubts arising from the incompleteness of the record should be construed against the plaintiff, and, without a complete record, a reviewing court should presume that the trial court's ruling was correct. *Foutch*, 99 Ill. 2d at 392; *Fauley v. Metropolitan Life Insurance Co.*, 2016 IL App (2d) 150236, ¶ 60. As one court has noted, this rule is "especially" important "when the abuse-of-discretion standard applies," because knowing the basis of the court's order is essential to assessing whether the discretion exercised was abused. *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 22.

¶ 80    In this case, the trial court had discretion to grant or deny plaintiff's motion to add the Ombudsman as a party. 735 ILCS 5/2-405(a) (West 2020) (providing that "[a]ny person *may* be made a defendant who *** is alleged to have or claim an interest in the controversy" (emphasis added)); 735 ILCS 5/2-406(a) (West 2020) (providing that, "[i]f a complete determination of a controversy cannot be had without the presence of other parties, the court *may* direct them to be brought in" (emphasis added)); 735 ILCS 5/2-616(a) (West 2020) (allowing for an amendment to

a complaint to "introduc[e] any party who ought to have been joined as *** defendant" on just and reasonable cause); *Cook v. AAA Life Insurance Co.*, 2014 IL App (1st) 123700, ¶ 35 (reviewing denial of motion to join defendants for an abuse of discretion); *Herron v. Anderson*, 254 Ill. App. 3d 365, 372 (1993) (providing that the denial of a motion to amend a complaint to add an additional party-defendant will not be reversed on appeal absent an abuse of discretion). To this end, the trial court held a hearing on plaintiff's motion to add the Ombudsman as a party on October 14, 2020. The only memorialization of the trial court's decision is a one-sentence order stating that plaintiff's "motion to add party is denied." There is no transcript of the hearing in the record. Without an adequate record to review the trial court's reasons for denying plaintiff's motion, we must presume that the trial court's ruling was correct. *Foutch*, 99 Ill. 2d at 392; *Fauley*, 2016 IL App (2d) 150236, ¶ 60.

¶ 81    Plaintiff disputes that the trial court had discretion to add the Ombudsman as a party. In this regard, plaintiff directs us to language in section 2-406(a) of the Code providing that, "[i]f a person, not a party, has an interest or title which the judgment may affect, the court, on application, *shall* direct such person to be made a party." (Emphasis added.) 735 ILCS 5/2-406(a) (West 2020). Plaintiff reasons that the Conflict-of-Interest Form is the Ombudsman's policy, so it has a stake in the litigation. Therefore, relying on the foregoing language of section 2-406(a), plaintiff reasons that the trial court was required to add the Ombudsman as a necessary party. We disagree. A necessary party need not be joined if the party's interests are fully and adequately represented by the parties to the action. *Holzer v. Motorola Lighting, Inc.*, 295 Ill. App. 3d 963, 973 (1998). Defendant clearly represented any interest the Ombudsman had in this action by defending the Ombudsman's request that plaintiff complete the Conflict-of-Interest Form. Indeed, as the agency ultimately responsible for ensuring that the Ombudsman program is free of conflicts, the

Department undoubtedly shares the Ombudsman's interest in seeing that AAAs complete the Conflict-of-Interest Form. See 42 U.S.C. § 3058g(f) (2018) (requiring "State agency" to ensure that the Ombudsman program is free of conflicts); 45 C.F.R. § 1324.21(b)(1), (b)(4)(ii) (2020) (requiring Department to "[e]stablish a process for periodic review and identification of conflicts" and disclose any conflicts and the steps taken to remedy them).

¶ 82    Plaintiff insists that the Department could not have adequately represented the interests of the Ombudsman because the Ombudsman and the Department are "clearly adverse parties" under several provisions of 42 U.S.C. § 3058g. However, none of the statutory provisions cited by plaintiff suggest that the Department and the Ombudsman have adverse interests, much less adverse interests in avoiding conflicts of interest. See 42 U.S.C. § 3058g(a)(3)(G)(iii) (2018) (requiring Ombudsman to "facilitate public comment on the laws, regulations, policies, and actions" that affect residents of long-term care facilities); 42 U.S.C. § 3058g(g)(1)(A)(ii) (2018) (providing that the Department "shall ensure that *** adequate legal counsel is available, and is able, without conflict of interest, to *** assist the Ombudsman and representatives of the Office in the performance of the official duties of the Ombudsman and representatives"); 42 U.S.C. § 3058g(g)(2) (2018) (stating that the Department "shall ensure that *** the [Ombudsman] pursues administrative, legal, and other appropriate remedies on behalf of residents"). Indeed, plaintiff does not explain how these particular provisions make the Ombudsman and the Department adverse parties. Plaintiff also contends that the Ombudsman's interests are adverse to those of the Department because "the purpose of the federal law upon which the [Conflict-of-Interest Form] is based is to resolve conflicts between the Department and the Ombudsman." See 45 C.F.R. § 1324.21(b)(1), (b)(2)(i) (2020) (providing that the Department and the Ombudsman "shall identify and take steps to remove or remedy conflicts of interest between the Office and the State

agency" and that the Department "shall *** [t]ake reasonable steps to avoid internal conflicts of interest"). Again, nothing in the authority cited by plaintiff suggests that the Department and the Ombudsman have adverse interests, much less adverse interests in avoiding conflicts of interest. More significantly, plaintiff challenged the authority of the Department and the Ombudsman to require AAAs to complete the Conflict-of-Interest Form. As noted above, as the agency ultimately responsible for ensuring that the Ombudsman program is free of conflicts, the Department undoubtedly shares the Ombudsman's interest in seeing that AAAs complete the Conflict-of-Interest Form. See 42 U.S.C. § 3058g(f) (2018) (requiring "State agency" to ensure that the Ombudsman program is free of conflicts); 45 C.F.R. § 1324.21(b)(1), (b)(4)(ii) (2020) (requiring Department to "[e]stablish a process for periodic review and identification of conflicts" and disclose any conflicts and the steps taken to remedy them). Therefore, plaintiff's arguments that the Department could not have adequately represented the interests of the Ombudsman lack merit and we affirm the trial court's denial of plaintiff's motion to add the Ombudsman as a party.

¶ 83    We now turn to whether the trial court properly dismissed count IV of the first amended complaint. Count IV alleged that the Conflict-of-Interest Form constituted a rule that must be adopted through the Act's rulemaking provisions because the Department "exercised discretion" by including policies not required by federal law. Specifically, plaintiff cited a requirement that each AAA complete the Conflict-of-Interest Form on an annual basis. Plaintiff also referenced a statement in the Conflict-of-Interest Form that the "[f]ailure to disclose a possible conflict of interest may be grounds for removal of designation." However, federal law requires the Department to report and identify any organizational conflict of interest. 42 U.S.C. § 3058g(f)(2)(B)(i) (2018); 45 C.F.R. § 1324.21(b)(1), (b)(4)(ii), (b)(5) (2020). Thus, requiring AAAs to complete the Conflict-of-Interest Form was merely an exercise of that duty and falls

within the exception provided by section 5.02 of the Illinois Act on the Aging (20 ILCS 105/5.02 (West 2020) (providing that the Act's rulemaking provisions do not apply to "the adoption of any rule required by federal law in connection with which the Department is precluded by law from exercising any discretion")). Moreover, the Conflict-of-Interest Form's statement that failing to disclose a conflict of interest could result in an AAA losing its designation is reflected in the Older Americans Act's prohibition of conflicts of interest and federal rules stating that an AAA may lose its designation for failing to comply with federal law. 42 U.S.C. § 3058g(f) (2018); 45 C.F.R. § 1321.35(a)(3) (2020).

¶ 84    Plaintiff seems to acknowledge that federal law requires the Department to report and identify organizational conflicts of interest. It argues, however, that the exception provided for in section 5.02 of the Act "was not intended to exclude from the [Act's rulemaking provisions] policy statements *based* on federal or state law." (Emphasis in original.) In other words, it is plaintiff's position that the Department exercised discretion in publishing the Conflict-of-Interest Form, because it does not recite the text of the federal conflict-of-interest requirements verbatim. We find plaintiff's argument misplaced. First, plaintiff cites no authority for this proposition. Thus, this argument is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (requiring appellant's brief to consist of argument, "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on" and providing that points not argued are forfeited). We reiterate that section 5.02 of the Illinois Act on the Aging expressly exempts from the Act's rulemaking provisions "the adoption of any rule required by federal law in connection with which the Department is precluded by law from exercising any discretion." 20 ILCS 105/5.02 (West 2020). Federal law requires the Department to report and identify any organizational conflicts of interest. Thus, the Department does not have any discretion regarding

2222 IL App (2d) 210234

whether it reports and identifies any organizational conflicts of interest. Thus, the Conflict-of-Interest Form falls within the exception provided for by section 5.02 of the Illinois Act on the Aging.

¶ 85    Secondly, like the Tracking E-mail, the Conflict-of-Interest Form does not constitute a "rule" under the Act, because its implementation involved the "prescription of standardized forms." The Conflict-of-Interest Form was standardized, as it was sent to all AAAs in the same format and sought the same information. See Webster's Third New International Dictionary 2223 (2002) (defining "standardize" as to "make uniform"). Further, requiring AAAs to complete the Conflict-of-Interest Form was a "prescription" that that form be used. See Webster's Third New International Dictionary 1792 (2002) (defining "prescription" in relevant part as "the process of laying down authoritative rules or directions").

¶ 86    For the foregoing reasons, we therefore affirm the trial court's dismissal of count IV of plaintiff's first amended complaint.[3]

---

[3]A little more than two weeks after filing its opening brief in this appeal, plaintiff filed a "Motion to Vacate the Dismissal of Count IV." Defendant filed a response to the motion, and we ordered the motion taken with the case. In the motion, plaintiff argues that the trial court's failure to add the Ombudsman as a necessary party renders the dismissal of count IV void. In its motion, plaintiff presents additional arguments based on the fact that the Ombudsman sent the Conflict-of-Interest Form to it a "third time." Plaintiff also asserts in the motion that, in correspondence with defendant's counsel, she admitted that the State is not representing the Ombudsman in this litigation. However, the argument regarding whether the Ombudsman should have been added as a necessary party was raised in plaintiff's brief on direct appeal, and we address the argument in

¶ 87        5. Counts V and VI—The Medicaid Policy and The ROS Memorandum

¶ 88     Next, plaintiff argues that the trial court erred in dismissing count V (regarding the Medicaid Policy) and count VI (regarding the ROS Memorandum) on the basis that plaintiff lacked standing to raise the claims asserted in those counts. Defendant disagrees, arguing that neither the Medicaid Policy nor the ROS Memorandum applied to plaintiff, so the trial court correctly determined that plaintiff lacked standing to challenge those policies.

¶ 89     The purpose of the standing doctrine is to ensure that courts decide actual specific controversies and not abstract or moot questions. *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 36. Standing requires that a party have a real interest in the action and its outcome. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004). Thus, to have standing to bring a claim, a party must assert its own legal rights and interests rather than assert a claim for relief based upon the rights of a third party. *Powell*, 2012 IL 111714, ¶ 36. Typically, lack of standing to bring an action is an affirmative defense, and the burden of proving the defense is on the party asserting it. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010); *Bayview Loan Servicing, LLC v. Cornejo*, 2015 IL App (3d) 140412, ¶ 12. Moreover, lack of standing is an affirmative matter for purposes of section 2-619(a)(9) of the Code. *Muirhead Hui L.L.C. v. Forest Preserve District*, 2018 IL App (2d) 170835, ¶ 21.

¶ 90     Instructive to our analysis is *Pre-School Owners Ass'n of Illinois, Inc. v. Department of Children & Family Services*, 119 Ill. 2d 268 (1988), a case cited by the trial court in its April 2021 memorandum opinion and order. In that case, the supreme court considered whether the plaintiffs

---

this disposition. Nothing plaintiff presents in its motion to vacate alters our analysis. Thus, we deny the motion as moot.

had standing to challenge a particular regulation that had been promulgated by the Department of Children and Family Services (DCFS) under the Child Care Act of 1969 (Ill. Rev. Stat. 1985, ch. 23, ¶¶ 2211 through 2230). The regulation barred from child-care employment persons who had been identified as having committed child abuse or neglect as well as persons awaiting trial or investigation on such allegations. See 89 Ill. Adm. Code 407.10(c), adopted at 7 Ill. Reg. 9215 (eff. Aug. 15, 1983)  amended at  8 Ill. Reg. 24937 (1985) (now repealed at 22 Ill. Reg. 1728 (eff. Jan. 1, 1998)). The plaintiffs, an association of day-care centers, argued that the regulation violated due process because it permitted DCFS to bar from child-care employment persons simply accused of certain offenses. The supreme court determined that the plaintiffs lacked standing to challenge the rule, because they had not alleged that they had been subjected to the particular regulation or that they were in imminent danger of harm from its operation. *Pre-School Owners Ass'n of Illinois, Inc.*, 119 Ill. 2d at 287. The court explained that, to have standing, a plaintiff " 'must have sustained, or be in immediate danger of sustaining, a direct injury as a result of enforcement of the challenged statute.' " *Pre-School Owners Ass'n of Illinois, Inc.*, 119 Ill. 2d at 287 (quoting *Illinois Gamefowl Breeders Ass'n v. Block*, 75 Ill. 2d 443, 451 (1979)).

¶ 91    In light of the supreme court's analysis in *Pre-School Owners Ass'n of Illinois, Inc.*, we conclude that the trial court properly granted defendant's motion to dismiss counts V and VI of the first amended complaint on the basis of a lack of standing. The Medicaid Policy states that it pertains to CCUs and specifies that its purpose is to "advise [CCUs] of changes in [the Department's] policy and procedure related to Mandatory Medicaid application, enrollment, and redetermination." The Medicaid Policy explained that participants in the Community Care Program were "no longer *** exempt from applying for Medicaid," so CCUs should verify whether a participant was receiving Medicaid benefits or had applied for them. Thus, the Medicaid

Policy is directed to CCUs, not plaintiff or any other AAA. Indeed, nowhere in its complaint does plaintiff allege that it had sustained a direct injury as a result of the enforcement of the Medicaid Policy or that it was in imminent danger of sustaining such an injury. Additionally, plaintiff did not allege that the Medicaid Policy requires anything of it or that the Department had taken any action against plaintiff for violating the Medicaid Policy. Therefore, the trial court properly granted defendant's motion to dismiss count V of the first amended complaint based on a lack of standing.

¶ 92 We reach the same conclusion with respect to the ROS Memorandum. The ROS Memorandum is directed to Adult Protective Services provider agencies. The ROS Memorandum asked the State's Adult Protective Services provider agencies, in preparing final investigative reports of abuse, neglect, exploitation, or self-neglect, to confirm what "organization *** is providing care coordination services" to the alleged victim. The ROS Memorandum further provides that the ROS "should be sent to the organization coordinating care for the individual at the time of substantiation" and that "it is the responsibility of the [Adult Protective Services] provider to attempt to share the ROS with the care coordination agency that is actively involved with the individual." Thus, the ROS Memorandum is directed at Adult Protective Services provider agencies, not plaintiff or any other AAA. Nowhere in its complaint does plaintiff allege that it had sustained a direct injury as a result of the enforcement of the ROS Memorandum or that it was in imminent danger of sustaining such an injury. Additionally, plaintiff did not allege that the ROS Memorandum requires anything of it or that the Department had taken any action against plaintiff for violating the ROS Memorandum. Therefore, the trial court properly granted defendant's motion to dismiss count VI of the first amended complaint based on a lack of standing.

¶ 93 Plaintiff insists that it has standing because its first amended complaint alleges that it had been designated the AAA for Area 1 and that it "oversees" the Community Care Program and

Adult Protective Services programs in its service area. However, plaintiff cites no authority stating that an entity's general oversight of a government program is sufficient to confer standing to challenge aspects of a policy that are inapplicable to it. Indeed, such a principle is inconsistent with the supreme court's pronouncement that, to have standing, a party challenging a law must have sustained, or be in immediate danger of sustaining, a direct injury as a result of its enforcement. See *Pre-School Owners Ass'n of Illinois, Inc.*, 119 Ill. 2d at 287.

¶ 94   Plaintiff also claims that it has standing because the Act allows the "general public" and "any interested persons" to comment on proposed rules. See 5 ILCS 100/5-40(b) (West 2020). Plaintiff did not raise this argument before the trial court in response to the motion to dismiss its first amended complaint. Thus, it has been forfeited. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36 (concluding that the plaintiff forfeited argument that it "failed to raise *** in its response to [the] defendants' motion to dismiss"). Forfeiture notwithstanding, plaintiff is incorrect that any member of the general public has standing to challenge an administrative rule. The Act's rulemaking provisions say nothing about the general public's ability to bring a lawsuit to invalidate alleged agency rules. They simply provide that members of the general public may comment on proposed rules during the rulemaking procedure. See 5 ILCS 100/5-40(b) (West 2020). Indeed, adopting plaintiff's interpretation would give any member of the public standing to challenge a rule, based solely on his or her self-proclaimed interest in it. This is not the law in Illinois. See *Glisson v. City of Marion*, 188 Ill. 2d 211, 231 (1999) (stating that "a party cannot gain standing merely through a self-proclaimed interest or concern about an issue, no matter how sincere").

¶ 95   Plaintiff also contends that the trial court should have rejected defendant's standing argument because she did not specify the subsection of section 2-619 upon which it was based. We disagree.

¶ 96    Defendant filed her motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020), which allows for combined motions under sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2020)). Section 2-619.1 states that a combined motion "shall be in parts." 735 ILCS 5/2-619.1 (West 2020). Further, each part "shall specify that it is made under one of Sections 2-615 [or] 2-619" and "shall *** clearly show the points or grounds relied upon under the Section upon which it is based." 735 ILCS 5/2-619.1 (West 2020).

>   "Where a motion does not comply with section 2-619.1, commingles claims, or creates
>   unnecessary complications and confusion, trial courts should *sua sponte* reject the motion
>   and give the movant the opportunity (if they wish) to file a motion that meets the statutory
>   requirements of section 2-619.1, or the movant may choose to file separate motions under
>   section 2-615 and section 2-619 ***." *Reynolds*, 2013 IL App (4th) 120139, ¶ 21.

¶ 97    Here, defendant complied with the requirement in section 2-619.1 that each part of a combined motion specify the section under which it is made. Defendant's motion to dismiss was divided into two parts. Defendant labeled one part of her motion as a "Motion to Dismiss Pursuant to 735 ILCS 5/2-619" and the other part as a "Motion to Dismiss Pursuant to 735 ILCS 5/2-615." Each part had multiple sections showing the points or grounds relied upon. The section for dismissal of counts V and VI based on a lack of standing was included in the part of the motion labeled as "Motion to Dismiss Pursuant to 735 ILCS 5/2-619." It is true that the heading on the section seeking dismissal of counts V and VI did not specify the subsection of section 2-619 under which it was made. However, in discussing the legal standards applicable to motions to dismiss, defendant cited sections 2-619(a)(5) and 2-619(a)(9) (735 ILCS 5/2-619(a)(5), (a)(9) (West 2020)). Further, defendant specified that section 2-619(a)(9) allows for the dismissal of an action "where 'the claim asserted against defendant is barred by other affirmative matter avoiding the

legal effect of or defeating the claim,' 735 ILCS 5/2-619(a)(9), *including lack of standing*, *Lyons v. Ryan*, 201 Ill. 2d 529, 534 (2002)." (Emphasis added.) Given this record, we conclude that defendant did not improperly commingle claims or create unnecessary complications and confusion. See *Reynolds*, 2013 IL App (4th) 120139, ¶ 21. Thus, there is no procedural basis upon which to reverse the grant of defendant's motion to dismiss counts V and VI based on a lack of standing.

¶ 98                              D. Motion for Sanctions

¶ 99      Prior to concluding, we note that plaintiff has filed a motion for sanctions pursuant to Illinois Supreme Court Rule 361 (eff. Dec. 1, 2021) and Rule 375 (eff. Feb. 1, 1994). Defendant filed an objection thereto. We ordered the motion and objection taken with the case.

¶ 100   In its motion, plaintiff argues that defendant should be sanctioned for (1) violating the Illinois Rules of Professional Conduct by claiming to represent an adverse party (the Ombudsman), (2) violating the Illinois Rules of Professional Conduct and the Illinois Supreme Court Rules by misstating facts and law, and (3) disputing facts in violation of the *Marshall* standard (see *Marshall*, 222 Ill. 2d at 429). Plaintiff posits that violating the Illinois Rules of Professional Conduct and misstating facts and law are sanctionable under Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994). Defendant responds that plaintiff's motion for sanctions should be denied because it is meritless and does not point to any harassing or bad-faith conduct on her part.

¶ 101   We agree with defendant that sanctions are not warranted. Plaintiff's motion does not point to any harassing or bad-faith conduct on defendant's part. Although plaintiff takes issue with the merits of the arguments in defendant's response brief, that is not a basis for Rule 375 sanctions. See *Jaworski v. Skassa*, 2017 IL App (2d) 160466, ¶ 19 (noting that even unsuccessful arguments are not sanctionable unless they are "devoid of arguable merit" or otherwise "brought in bad

faith"). Hence, in exercise of the discretion we possess regarding this issue, we reject plaintiff's request for sanctions under Rule 375(b).

¶ 102                                    III. CONCLUSION

¶ 103    For the reasons set forth above, we affirm the judgment of the circuit court of Winnebago County.

¶ 104    Affirmed.

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 20-MR-38; the Hon. Lisa Renae Fabiano, Judge, presiding. |
| **Attorneys for Appellant:** | Timothy Scordato and Grant Nyhammer, of Rockford, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Carson R. Griffis, Assistant Attorney General, of counsel), for appellee. |